L. HELLER AND SON, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18987. Promulgated June 22, 1949.

*Bernard Weiss, Esq.,* for the petitioner.
*Ellyne E. Strickland, Esq.,* for the respondent.

1110

## OPINION.

Opper, *Judge*: There is evidence from which it may be concluded that petitioner's promise to some of the creditors of its subsidiary

to make good their losses on the subsidiary's 77B reorganization was contemporaneous with the latter proceeding, and that the consent of the creditors to the reorganization was a consideration for petitioner's undertaking. If so, the payment by petitioner was pursuant to a contractual obligation, notwithstanding the principal debtor's discharge, see *Abraham Greenspon*, 8 T. C. 431; *Welch v. Helvering*, 290 U. S. 111, footnote 1; and deduction as a loss of the amounts paid accordingly would be proper in the instant year. *Charles G. Berwind*, 8 T. C. 1112; *Abraham Greenspon, supra*.

But even if there were no binding commitments, petitioner's standing in the business community, its relationship to the jewelry trade generally, and its credit rating in particular, characterized the payments as calculated to protect and promote petitioner's business and as a natural and reasonable cost of its operation. *Harris & Co. v. Lucas* (C. C. A., 5th Cir.), 48 Fed. (2d) 187. As such, they are deductible in any event as ordinary and necessary business expense. *Scruggs, Vandervoort-Barney, Inc.*, 7 T. C. 779; *Catholic News Publishing Co.*, 10 T. C. 73.

The theory that these were capital expenditures is disposed of in the following language in *Harris & Co. v. Lucas, supra:*

It is argued, however, on behalf of respondent, that the expenditures were in the nature of the purchase of good will, * * * a capital asset. * * * Good will consists largely of a reputation for competence, honesty, and fair dealing, but its value is in attracting customers and not in securing credit. The establishment of credit to purchase does not at all guarantee that it will continue over a period of years. * * *

* * * * * * *

It is perfectly plain that the payments did not constitute capital investment.

We find it unnecessary to determine whether the payment is to be more accurately and technically described as a loss or a business expense. Claim is made on both grounds. Cf. *Merton E. Farr*, 11 T. C. 552, 565–566. On one or another, the deduction should be permitted.

For the inclusion of computations on other issues now apparently conceded,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

HILL, *J.*, dissenting: A merchant's credit is built on his record as to honesty, his ability to pay, and the payment of his obligations. I do not find in the record here any direct evidence that petitioner was deficient in any of the particulars named. So far as the record here discloses, it was petitioner's subsidiary and not petitioner that was in financial difficulties.

If in the instant proceeding petitioner's credit was impaired by reason of the deficiencies of its wholly owned subsidiary, we must look for the basis for ascribing such deficiencies to petitioner. If petitioner in discharging its responsibilities of control over the subsidiary diverted the latter from the line of rectitude or sound business practices in its trade relations and thus impaired the subsidiary's ability to pay its debts, it is conceivable that an impairment of petitioner's credit standing might also result therefrom. If such impairment of petitioner's credit so resulted, it occurred from its voluntary conduct in controlling the operation of another corporation's business.

The question then is, Can the cost of remedying any such impairment of petitioner's credit be classed as an ordinary and necessary business expense of petitioner? The remedy as applied, according to petitioner's contention, consisted of paying the debts of the subsidiary in order that the latter might be rehabilitated under a 77B reorganization. It is claimed by petitioner that such rehabilitation of the subsidiary was necessary to, and did, restore its own credit standing. In other words, petitioner seeks to deduct as an ordinary and necessary expense of its own business the cost of eliminating an impairment of its credit due to its own control of the business of another corporation. The foregoing, in my opinion, reflects the logical development of the theory upon which petitioner claims the deduction. I submit that such theory forecloses the right to such deduction.

However, the record discloses facts which call for the application of another legal principle which, I think, definitely denies the right of deduction claimed by petitioner.

The subsidiary was reorganized under section 77B of the Bankruptcy Act. A proposed plan of reorganization was accepted by its creditors and ordered adopted by the court. On the surface, the main points of that plan were: (a) That the unsecured creditors should be paid 45 per cent of their claims out of the assets of the subsidiary; and (b) that petitioner should subordinate its claims against the subsidiary to those of other unsecured creditors to the extent of such 45 per cent. But, on the side, petitioner's president orally agreed on behalf of petitioner with such other unsecured creditors that petitioner would pay the remaining 55 per cent of their claims against the subsidiary.

Obviously, this oral agreement was made for the purpose, and had the effect, of inducing such unsecured creditors to accept the proposed plan of reorganization. It accomplished its intended purpose.

The question, if any, of whether such agreement, because it was oral, was enforceable, is eliminated for the reason that to the extent here involved it was performed.

The promise to pay and the payment by petitioner of the remaining 55 per cent of certain claims against its subsidiary was based on a con-

sideration which petitioner must have deemed valuable and adequate. That consideration was the acceptance by the other creditors of the plan of reorganization of the subsidiary. I assume the purpose of the reorganization was to enable the subsidiary to continue in business. I can conceive of no other reason for the reorganization. No doubt it was deemed financially advantageous to petitioner that the subsidiary be so reorganized as to conserve its status as the operator of a going business rather than have it run through the wringer of an outright bankruptcy proceeding.

The arrangement whereby petitioner promised to pay and paid the moneys herein involved was not to protect the business of its own operations, but the business and assets of the subsidiary. Moreover, the promise and payments in question were made pursuant to a side agreement in connection with the reorganization proceedings. It is true that the record shows representations were made to petitioner that it would be helpful to its credit if it paid the moneys which it had promised to pay. However, the fact that such payments may have had the effect of strengthening the credit standing of petitioner was merely incidental to the performance of its agreement entered into for a valuable and adequate consideration. Petitioner got what it paid for, namely, the acceptance of its plan for the reorganization of its subsidiary. It realized neither gain nor loss, nor incurred business expense, from such transaction any more than if it had bought and paid for a house, a horse, or an automobile.

Therefore, it appears to me that petitioner neither sustained a deductible loss nor made the payments in question as an ordinary and necessary expense of its business. Certainly, there is no basis for a contention that petitioner is entitled to a deduction as a bad debt for the payments made.