Morton and Nellie Gilford v. Commissioner.
Gilford v. Commissioner
Docket No. 88327.
United States Tax Court
T.C. Memo 1965-14; 1965 Tax Ct. Memo LEXIS 314; 24 T.C.M. (CCH) 57; T.C.M. (RIA) 65014; January 29, 1965
*314 Petitioner, Morton Gilford, a 50-percent owner and general manager of a corporation engaged in the business of salvaging for insurance companies, caused his wife, Nellie, to advance $19,000 to the corporation in 1955 at a time when the corporation was insolvent and going out of business. The funds were used to pay the corporate indebtedness to a bank and to its principal customer, an insurance company. The corporation ceased doing business in 1957, and petitioner formed another corporation of which he was the sole owner and principal officer, to conduct the same business. Held, the $19,000 was not deductible by petitioners for the year 1957 either as an ordinary and necessary business expense (sec. 162), as a business bad debt (sec. 166), or as an ordinary and necessary expense incurred for the production or collection of income (sec. 212), and did not produce a net operating loss for 1957 which could be carried back to 1955. Bruce I. Hochman and Justin L. Goldner, for the petitioners. Richard Fishman, for the respondent. DRENNEN
Memorandum Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax for the taxable years 1955 and 1957 in the respective *315 amounts of $2,310.98 and $423.29. By amendment to the answer to the amended petition, respondent claimed an increase in the deficiency in petitioners' income tax for the year 1957 in the amount of $672.33; the total deficiency for the year 1957 thereby being increased to $1,095.62. Certain issues raised by the pleadings have been disposed of by agreement of the parties, and the agreements with respect thereto are incorporated herein by reference and adopted as a part of the Court's findings and conclusions, to be taken into consideration in arriving at the decision to be entered by the Court under Rule 50. The only issue remaining for decision is whether petitioners are entitled to a deduction for the year 1957 in the amount of $19,000, either as a business bad debt or as an ordinary and necessary business expense of their trade or business, resulting in an operating loss for the year 1957 which may be carried back and deducted by petitioners in the year 1955. [1] *316 All of the facts have been stipulated and are found accordingly. Those facts pertinent to the issue remaining for decision are recited below in substantially the same language used in the stipulation. Petitioners Morton Gilford (hereafter referred to as Morton) and Nellie Gilford (hereafter referred to as Nellie) are husband and wife who resided in Beverly Hills, Calif., during the years in issue. They filed joint Federal income tax returns for the years 1955 and 1957 with the district director of internal revenue at Los Angeles, Calif.
During the year 1955, Morton owned 50 percent of the outstanding shares of stock of the Schwartz Salvage Corp. (hereafter referred to as Schwartz), a California corporation, and was employed by Schwartz as its manager and as a salesman. During the year 1955, petitioners were engaged in no trade or business other than Morton's employment by Schwartz. *317 Schwartz was primarily engaged in the trade or business of salvaging and selling business inventories for the accounts of various insurance companies which had suffered losses on policies insuring the businesses owning such inventories. Upon the completion of a salvage job, Schwartz would customarily deduct a commission for services rendered from the proceeds of sale and remit the balance thereof to the insurance company which had retained its services. During the year 1955, Schwartz was heavily indebted to the Ohio Farmers Insurance Co. as a result of salvage jobs performed by it, and was also indebted to the Southeast National Bank of Chicago, Ill. During the year 1955, Morton caused Nellie to loan [2] $19,000 to Schwartz. Substantially all of the $19,000 was used to pay debts owed by Schwartz to the Ohio Farmers Insurance Co. and to the Southeast National Bank. At the time Nellie loaned [2] the $19,000 to Schwartz, the corporation was without cash or other liquid assets and was both equitably and legally insolvent. Petitioners knew that these funds could not be repaid to them by Schwartz. On January 25, 1957, Schwartz assigned all of its assets to a receiver or an assignee *318 in an assignment for the benefit of its creditors and thereafter went out of business. During the year 1957, Morton organized Salvage Recovery Corp., a California corporation (hereinafter referred to as Recovery), of which he was the sole shareholder. The new corporation was engaged in the same type of business that had been carried on by Schwartz, and Morton was the principal employee thereof. The parties have stipulated that if Morton were called as a witness in this case he would testify substantially as follows: (a) An individual's honesty and integrity play an important role in the insurance salvage business. A salvage job may last from 1 to 3 months, during which time the salvager has custody and control of goods and moneys belonging to the insurance company. During that time the salvager would be handling the money of the insurance company without bond. (b) Unless the insurance company has complete faith and trust in a salvager it will not give the salvager its business. During the years in issue Schwartz had only one or two other competitors as insurance salvage brokers in the southern California area. The other salvagers bought the goods outright from the insurance companies *319 and sold them as their own goods. (c) In the year 1955 the officials of Ohio Farmers Insurance Co. knew that petitioners personally had sufficient assets to pay the debt due the insurance company by Schwartz. Thus Morton believed it was necessary for him to loan money to Schwartz so that it could pay its debt to Ohio Farmers Insurance Co. in order to protect his personal reputation for integrity and honesty. (d) After Morton organized Recovery in 1957, the Ohio Farmers Insurance Co. gave the new corporation its salvage business and its claims manager was instrumental in causing other insurance companies to give their business to the new corporation by assuring them that Morton had a good reputation for integrity and honesty. (e) During the years 1955, 1956, and 1957, Ohio Farmers Insurance Co. was the only insurance company that Schwartz was doing business with. As of the date this case was submitted, Morton [3] was doing business with Ohio Farmers Insurance Co. and approximately 21 other companies. On their 1957 *320 return, petitioners claimed the $19,000 advanced to Schwartz as a business bad debt. As a result of this claimed deduction, petitioners reported a net operating loss for the year 1957 and claimed a tentative carryback adjustment for the year 1955 resulting from the operating loss carryback from 1957. Respondent determined that the $19,000 payment was not allowable as a business bad debt but was allowable as a nonbusiness bad debt deductible as a short-term capital loss. Respondent also disallowed the operating loss carryback to 1955. In their original brief petitioners contend that the $19,000 advanced to Schwartz in 1957 is deductible under the provisions of sections 162, 166, and/or 212 of the 1954 Code, [4] and rely primarily on Trent v. Commissioner 291 F. 2d 669 (C.A. 2, 1961), reversing 34 T.C. 910 (1960); Ray A. Myers, 42 T.C. 195 (1964); and a Memorandum Opinion of this Court. [5]
Section 162[6] provides a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a *321 trade or business. Section 166[7] *322 provides, in pertinent part, a deduction for any debt that becomes worthless in the taxable year, except that in the case of a taxpayer other than a corporation a nonbusiness bad debt becoming worthless shall be considered as a loss from the sale or exchange of a capital asset held for less than 6 months (the deduction for which is limited to $1,000 in a taxable year); and defines "nonbusiness debt" as a debt other than a debt created or acquired in connection with a trade or business or a debt the loss from which is incurred in the taxpayer's trade or business. Section 212[8] provides, in pertinent part, a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, etc., of property held for the production of income. To place this issue in proper perspective, it is important *323 to recognize at the outset that petitioner was not engaged individually and directly in any trade or business except that of being an employee of first Schwartz and later Recovery. Petitioner chose to do business in corporate form during the entire period involved and he cannot shuck the corporate veil for purposes of this case alone. On reply brief, apparently to avoid the argument of loan versus contribution to capital, which arises so often when a stockholder makes advances to a closely held corporation, petitioners appear to abandon the argument that the $19,000 payment to Schwartz is deductible in 1957 as a business bad debt. After pointing out that there was no evidence presented indicating that petitioner intended the payment as a loan, petitioners state in their reply brief: "The foregoing, together with the fact that no expectation or evidence was presented that the taxpayers expect the 'loan' to be repaid, indicates that the payment was not a loan or contribution to capital." Petitioners then argue that if it was not a loan or contribution to capital and the payment is deductible by petitioners, it must be an ordinary and necessary business expense. The latter argument begs *324 the question because it assumes that the payment is deductible. While for purposes of a decision in this case we need not characterize the payment within the language of the Internal Revenue Code, we might agree with petitioners that the evidence does not support a claim that it was a loan to Schwartz or anyone else which gave rise to a debt. If there was no debt created and petitioners did not make the payment as guarantor of the debts of Schwartz, such as in Putnam v. Commissioner, 352 U.S. 82 (1956); Trent v. Commissioner, supra; Eugene H. Rietzke, 40 T.C. 443 (1963), and other cases, we would find difficulty in allowing it as a bad debt deduction under section 166. However, we need only deter mine here that the $19,000 payment is not deductible as a business bad debt, which we do for the above and other reasons hereinafter mentioned. Although petitioners mention section 212 several times in their briefs they make no argument as to why this $19,000 payment to Schwartz would be deductible under that section, and we perceive no reason why it should be. This brings us to petitioners' principal argument that the $19,000 payment is deductible as an ordinary and necessary expense *325 paid or incurred in carrying on a trade or business, deductible under section 162. While petitioners' argument is somewhat ambivalent they seem to claim that the insurance company with which Schwartz was doing business in 1955 was really looking to Morton for payment of any indebtedness due it from Schwartz, and that Morton was therefore required to advance the money to Schwartz to pay its debts to the insurance company in order for Morton to continue in the insurance salvage business. Initially, we do not think there is sufficient evidence to support this argument. Morton's stipulated testimony is to the effect that in 1955 the officials of Ohio Farmers Insurance Co. knew that petitioners had sufficient assets to pay the debt due the insurance company by Schwartz and thus Morton believed it was necessary for him to advance the money in order to protect his personal reputation for honesty and integrity. There is no evidence that the insurance company was looking to Morton for payment of the indebtedness or that it would have made any effort to collect it from him (unless there were some grounds therefor not apparent from the record). It is stipulated that Schwartz used substantially *326 all of the $19,000 to pay its debts to the insurance company and the bank, but the record does not show how much was paid to each or how the indebtedness to the bank had been incurred. Next, it would seem that if this was an expense paid or incurred by petitioners in carrying on a trade or business it would be deductible, if at all, in the year 1955 when it was paid. While petitioners' taxable year 1955 is before us and we could consider the deductibility of the payment as an ordinary and necessary business expense in 1955 if properly put in issue, petitioners made no such claim in their pleadings and the parties stipulated [9] that the only issues for decision were whether petitioners were entitled to a deduction in the amount of $19,000 in the taxable year 1957 as a business bad debt or a business expense, which resulted in a net operating loss in 1957 which could be carried back to 1955. And, finally, upon consideration of the merits of the question whether this payment qualified as an ordinary and necessary expense of petitioners' trade or business, we conclude that it does not. [10] *327 Petitioners' only business was that of Morton being an employee. There is no evidence that Morton was required to make the payment to Schwartz in order to keep his job with Schwartz. Compare Trent v. Commissioner, supra; Ray A. Myers, supra.In Trent, the taxpayer was fired when he refused to make additional advances to his employer. In Myers the taxpayer guaranteed the completion of the houses and contracted with the debtor to build them. In fact, petitioners here recognize that the payment was not made to protect Morton's job with Schwartz because Schwartz was admittedly insolvent and going out of business when the payment was made. The payment was not proximately related to maintaining Morton's trade or business as an employee. See Eugene H. Rietzke, supra. Petitioners urge that the payment was made to maintain or protect Morton's trade or business of salvaging for insurance companies, and cite Allen v. Commissioner, 283 F. 2d 785 (C.A. 7, 1960), affirming in part and reversing in part a Memorandum Opinion of this Court; C. Doris H. Pepper, 36 T.C. 886 (1961); Charles J. Dinardo, 22 T.C. 430 (1954); *328 L. Heller & Son, Inc., 12 T.C. 1109 (1949), in support thereof. It is clear that in each of the cited cases, wherein the courts have allowed deductions for amounts voluntarily paid on the debts of others, the taxpayer who made the payment was engaged directly in a trade or business which would be adversely affected if the debts were not paid or would be benefited if the debts were paid. The payments were proximately related to the separate businesses in which the taxpayers were engaged. But here Morton was not engaged in a trade or business separate from that of his corporations. He was engaged in the business of rendering services to Schwartz for pay, and the $19,000 payment did not benefit that separate business, if such it was. Had Morton's new corporation, Recovery, made the payment it might have had better grounds for claiming the deduction, because it continued in the same business as Schwartz had conducted and with the same insurance company, but so far as the record shows petitioners never did engage directly in the insurance salvage business themselves. We have no doubt that this payment to Schwartz, which was applied by Schwartz to its indebtedness to the insurance company *329 and the bank, indirectly enhanced Morton's reputation for honesty and integrity [11] but we do not understand how that could be proximately related to a trade or business Morton was conducting when the payment was made. See George P. Weddle, 39 T.C. 493 (1962), affd. 325 F. 2d 849 (C.A. 2, 1963). Payments to protect an established business are deductible as ordinary and necessary business [expenses], Allen v. Commissioner, supra; but expenses incurred to acquire a business or to enhance the reputation are capital in nature and are not ordinary and necessary expenses of the operation of a business. Welch v. Helvering, 290 U.S. 111 (1933). We think the payment made by petitioners here was of the latter type and was not an ordinary and necessary expense of carrying on a trade or business nor was it created or acquired in connection with, nor incurred in, a trade or business of petitioners in the years here involved. We hold for respondent on this issue. *330 To reflect concessions made by the parties on other adjustments made by respondent, Decision will be entered under Rule 50. Footnotes
1. The parties stipulated: "8. The only issues for decision herein are as follows: "(a) Did the respondent correctly determine that the petitioners' claimed deduction in the taxable year of 1957 in the amount of $19,000.00 was not deductible as either a business bad debt or a business expense, but rather constituted a nonbusiness bad debt? "(b) Did the respondent correctly determine that petitioners did not incur a net operating loss in the taxable year 1957 which could not be carried back and deducted in the taxable year 1955?"↩
2. As stipulated.↩
3. It was stipulated that "Mr. Gilford" was doing business with the listed insurance companies. Presumably he was doing business in the corporate form of Schwartz Salvage Corp.↩
4. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
5. Samuel J. Grauman, T.C. Memo. 1964-226↩ (on appeal (C.A. 9, Jan. 12, 1965)).
6. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * ↩
7. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *
(d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
8. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
9. See fn. 1 where the pertinent part of the stipulation is set down verbatim.↩
10. For the same reasons it would not be a business, as distinguished from a nonbusiness, bad debt.
11. We are at somewhat of a loss to understand how a business conducted as Schwartz's business was described in the stipulated facts could have become indebted unless the salaries it paid or other expenditures it made were excessive.↩