**Ruben SIMON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Meyer SIMON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Morris SIMON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 12062–12064.**

United States District Court
E. D. Michigan, S. D.
April 14, 1959.

B. Dave Bushaw, Detroit, Mich., Arnold F. Zeleznik, Detroit, Mich., of counsel, for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Philip R. Miller, Victor A. Altman, Attys., Dept. of Justice, Washington, D. C., Fred W. Kaess, U.S. Atty., Elmer L. Pfeifle, Jr., Asst. U. S. Atty., Detroit, Mich., for defendant.

THORNTON, District Judge.

To reduce the issue here presented to its simplest terms, it may be thus stated:

Is a taxpayer entitled to a deduction on his 1944 income tax return for the excess rental monies received by him in 1943, (and reported as 1943 income) and subsequently, in 1944, repaid to the lessee, the said repayment being pursu-

ant to an agreement providing that such repayment be made when the amount considered by Treasury Department to be excessive should be determined, said determination being actually made in 1944?

These cases have been submitted to the Court on a stipulation of facts and upon briefs. There are three plaintiffs, one in each of the three suits, Nos. 12062, 12063 and 12064, the said plaintiffs being brothers who together, as a partnership, owned the long term leasehold interest [1] covering the property, the rent from which is the subject matter of this controversy. We attach as an appendix hereto the stipulation of facts. We also make reference to the earlier opinion of this Court dated August 29, 1957, dealing with the issue of collateral estoppel in relation to a decision of the Tax Court disallowing this same claim in relation to the year 1943. We attach hereto a copy of our earlier opinion for easy reference. Because of the existence of the Tax Court opinion above referred to, with its full presentation of the factual background, of the stipulation of facts attached hereto, and of the earlier opinion of this Court,* no factual presentation, as such, will be made here.

For convenience, we will hereafter refer to a single plaintiff and a single case before this Court, it being understood that what we say applies equally to each plaintiff and to each of the three cases under consideration, and it being further understood that the three plaintiffs were partners operating as such.

The Government, in its brief, cites with approval the now well-known (in this Circuit) Haberkorn case [2] in which Judge Picard wrote the District Court opinion and Judge Miller wrote the opinion for the Court of Appeals. The Government, in its brief, agrees that "Where the individuals received the funds under claim of right and in subsequent years came under obligation to repay the mon-

ey, they are entitled to deductions in the year of repayment." (Government Brief, p. 12.) This, of course, is the holding in the Haberkorn case. The above quotation provides a perfect framework into which the facts in the instant case fit except for a dispute about one word—obligation. The position of the Government in this matter is bottomed on one, and only one, premise: that there was no obligation to repay.

There is no dispute that plaintiff received rental monies in 1943. There is no dispute that he repaid to the corporate lessee a portion of said monies in 1944. There is no dispute that he was required, in the light of the Tax Court decision, to report all of said rental monies as income in his income tax return for 1943. The dispute arises over whether or not he may claim as deductions on his 1944 return such portions of said rental monies as he repaid to the lessee in 1944. The position of the taxpayer is that the repayments were made pursuant to an agreement. The taxpayer had reason to believe that the amount of rent being paid by the corporate taxpayer was in excess of what the Treasury Department would allow the corporation to take as business expense. He therefore, after various discussions not here pertinent, awaited a determination as to the amount of rental that would be allowable as a business expense deduction for the corporation. The taxpayer and the corporation had agreed to adjust the differential by means of repayment to the corporation of that amount of rental in excess of the amount determined to be reasonable by the Treasury Department. The Tax Court held that said agreement, made subsequent to the close of the partnership's fiscal year, would not operate to retroactively reduce the distributed income of the partnership for that year (1943). Hence the plaintiff has sought a determination in this court that he may take deductions for the year 1944, which

---

1. Acquired by plaintiffs June 11, 1940 and expiring June 30, 2032.

* See Appendix.

2. Haberkorn v. U. S., D.C., 78 F.Supp. 192, affirmed 6 Cir., 1949, 173 F.2d 587.

is the year of the actual making of the repayment. The Haberkorn case gives him that right unless the word "obligation" should be construed so as to preclude him.

We wish to place our decision on three grounds: the first is an opinion of the Court of Appeals for this Circuit; the second is some language contained in an opinion from the Ninth Circuit dated January 6, 1959; and the third is our own common sense on which we believe we are entitled to rely when we are faced with the exercise of some discretion, as appears to be the case here in relation to the position taken by the Government on the point of "obligation".

First, the Court of Appeals opinion— the opinion referred to is a per curiam opinion, very short, in which the Court affirmed the decision of the Tax Court. The affirmance is found in Commissioner of Internal Revenue v. Smucker, 6 Cir., 1948, 170 F.2d 147. The Tax Court opinion is Smucker v. Commissioner, 1947 P-H T.C. Memorandum Decisions, ¶ 47,-265. A reading of the facts in that case leads the Court to the conclusion that any differences between the situation there and the one here are meaningless insofar as related to vital factors to be considered in deciding this cause. The Government, in its brief at page 12, says that "the Tax Court held that the individuals were not taxable on bonuses paid back to their corporation pursuant to an oral agreement with the corporation, since the bonuses would not have been paid if there had been no such agreement." Are we to assume that the corporation in the case before us would have allowed its fiscal year to end with rentals paid out in excess of what would be allowed as a deductible business expense, once it became aware there might be some question as to the amount of such allowance, without making some provision for its own protection tax-wise, when it was in position to do so? A normal provision is the one right before our eyes and one which the Government insists should be discredited. On the basis of the affirmance by the Court of Appeals of the deci-sion of the Tax Court in the Smucker case, we are persuaded that the instant case should be decided the same way, having become convinced that for all purposes here pertinent, the factual picture is the same.

Second, the opinion of Judge Chambers in the recent case of Kanter v. United States, 9 Cir., 1959, 262 F.2d 761 indicates that there is a frequent occurrence of Government innuendoes suggesting something less than respectability on the part of Americans seeking to avoid taxes in a proper manner. Obviously, that is what the taxpayer in the instant case has attempted to do by the agreement here made which created the obligation. And this brings us to our last ground.

Third, it is common sense, as well as sound business practice, to attempt to gain the tax benefit of business-expense-deduction for rental paid out. The taxpayer here did no more than attempt to do this. He could not know in advance what figure the Treasury Department would approve. Once such determination was made, the new rental figure could be definite. Also, after repayment of the excess to the corporation, in accordance with the agreement, it is quite conceivable it might be paid out to the stockholders in dividends. The Government would get its due tax in income tax on said dividends. We believe that it is necessary to be realistic as well as theoretical. We think that the position of the Government should be one of fair play with the taxpayer. We quote from the brief for plaintiff, at page 14: "Plaintiffs should not be penalized for their cooperation. Men must turn square corners when they deal with the Government, Rock Island, A. & L. R. Co. v. U. S., 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188, and the Government ought to turn square corners when dealing with its citizens. Penrose v. Howbert, 10 Cir., 38 F.2d 577, 68 A.L.R. 820." In our opinion, plaintiff's plan of procedure was open and above board and within the bounds of permissible and proper tax avoidance. The Government's position is a "pound of flesh" one that is unsupport-

ed by technical requirements. We conclude that the taxpayer was obliged to refund the excess rental once the amount thereof had been determined, and that the Smucker decisions (Tax Court and Court of Appeals) are so close to the issue here as to be controlling.

Appropriate orders may be presented.

Appendix

Stipulation of Facts

It Is Hereby Stipulated and Agreed by and between the parties hereto, by their respective counsel, that the facts hereinafter stated shall be taken as true; provided, however, that this Stipulation shall be without prejudice to the rights of either party to introduce upon the trial of this case any other and further evidence.

1. The instant actions concern the year 1944, were timely filed and both parties agree that this Court has jurisdiction of these actions.

2. The following numbered exhibits are true copies of the original instruments or true abstracts from the books and records of the corporation, Simm's Cut Rate Stores, Inc. (Sometimes hereinafter referred to as Simm's Cut Rate or Simm's Cut Rate, Inc.), and both parties waive all objections thereto on the issue of genuineness:

Ex. 1. Lease dated May 20, 1941, between Meyer Simon, Ruben Simon and Morris Simon, lessors, and Myron M. Landsberg, lessee.

Ex. 2. Assignment dated November 1, 1941, of foregoing lease (Ex. 1) by the lessors to Simm's Cut Rate Stores, Inc.

Ex. 3. Letter dated March 18, 1944, from Geo. E. Neal to Simm's Cut Rate Stores, Inc.

Ex. 4. Copy of waiver of restrictions on assessment and collection of income and excess profits taxes for the taxable year ending October 31, 1942, dated March 6, 1944, as executed by Simm's Cut Rate Stores, Inc.

Ex. 5. Abstracts from records of Simm's Cut Rate Stores, Inc. (a) through (h) as follows:

Ex. 5(a) Trial Balance, Simm's Cut Rate December 31, 1943

Ex. 5(b) Trial Balance, Simm's Cut Rate January 31, 1944

Ex. 5(c) Trial Balance, Simm's Cut Rate February 29, 1944

Ex. 5(d) Trial Balance, Simm's Cut Rate March 31, 1944

Ex. 5(e) Ruben Simon—Statement of Account with Simm's Cut Rate, December 31, 1943, through March 31, 1944, as reflected on books of Simm's Cut Rate.

Ex. 5(f) Meyer Simon—Statement of Account with Simm's Cut Rate, December 31, 1943 through March 31, 1944 as reflected on books of Simm's Cut Rate.

Ex. 5(g) Morris Simon—Statement of Account with Simm's Cut Rate, December 31, 1943 through March 31, 1944 as reflected on books of Simm's Cut Rate.

Ex. 5(h) Summary of accounts due to or from Ruben Simon, Meyer Simon and Morris Simon per books of Simm's Cut Rate, December 31, 1943 through March 31, 1944 and Summary of Notes Payable to Simon Brothers from Simm's Cut Rate as at December 31, 1943, January 31, 1944, February 29, 1944 and March 31, 1944.

Ex. 6. Copy of original Corporation Income Tax Return, Form 1120, for the fiscal year ending October 31, 1943, for Simm's Cut Rate Stores, Inc.

Ex. 7. Copy of Amended Corporation Income Tax Return, Form 1120, for fiscal year ending October

31, 1943, for Simm's Cut Rate Stores, Inc.

Ex. 8. Copy of original Partnership Return of Income, Form 1065, for fiscal year October 31, 1943, for Simon Brothers.

Ex. 9. Copy of Amended Partnership Return of Income, Form 1065, for fiscal year October 31, 1943 for Simon Brothers.

Ex. 10. Copy of original Partnership Return of Income, Form 1065, for fiscal year October 31, 1944 for Simon Brothers.

Ex. 11. Summary of sales by Simm's Cut Rate Stores, Inc., its tenants, rents accrued and paid and balance of accrued rents at year end per books of Simm's Cut Rate Stores, Inc. for the fiscal years ending October 31, 1944 through October 31, 1955. (Plaintiffs object to this exhibit as to all data appearing therein other than data pertaining to the year 1944 for the reason that data pertaining to other years therein is irrelevant, incompetent and immaterial.)

Ex. 12. A copy of the Tax Court decision, including findings of fact and opinion re: Ruben Simon, Meyer Simon and Morris Simon v. Comm., also further identified as 11 T.C. 227.

3. The following exhibits to the complaints are incorporated herein by reference and both parties agree that they are true copies of the original instruments and waive all objections thereto on the issue of genuineness:

Ex. A. Copies of original Individual Income Tax Returns, Forms 1040, for the calendar year 1944, of Ruben Simon, Meyer Simon and Morris Simon as attached to their respective Bills of Complaint as Exhibit A, but herein identified as follows:

In the case of Ruben Simon, as Ex. A–1

In the case of Meyer Simon, as Ex. A–2

In the case of Morris Simon, as Ex. A–3

Ex. B. Copies of receipted Claims for Refund, Forms 843, for the calendar year 1944, for Ruben Simon, Meyer Simon and Morris Simon as attached to their respective Bills of Complaint as Exhibit B, but herein identified as follows:

In the case of Ruben Simon, as Ex. B–1

In the case of Meyer Simon, as Ex. B–2

In the case of Morris Simon, as Ex. B–3

Ex. B–1. Copies of Amended Individual Income Tax Returns, Forms 1040, for the calendar year 1944, for Ruben Simon, Meyer Simon and Morris Simon as attached to their respective Bills of Complaint as Exhibit B–1, but herein identified as follows:

In the case of Ruben Simon, as Ex. B–1–a

In the case of Meyer Simon, as Ex. B–1–b

In the case of Morris Simon, as Ex. B–1–c

Ex. C. Lease dated November 5, 1941, between Meyer Simon, Ruben Simon and Morris Simon and Simm's Cut Rate Stores, Inc.

Ex. D. Waiver of Notice of Annual Meeting of Board of Directors of Simm's Cut Rate Stores, Inc. dated October 23, 1943.

Ex. E. Minutes of Annual Meeting of Board of Directors of Simm's Cut Rate Stores, Inc. on November 9, 1943. (Except it is agreed by both parties that the third (3rd) line of paragraph Four (4) on the Bills of Complaint of Ruben Simon and Meyer Simon should correctly read "for the fiscal year from November 1, 1942, to October 31, 1943"

and not "for the fiscal year from November 1, 1942 to October 31, 1942."

Ex. F. Letter dated November 12, 1943, from George E. Neal to Simm's Cut Rate Stores, Inc.

Ex. G. Agreement dated August 1, 1944, between Meyer Simon, Ruben Simon and Morris Simon and Simm's Cut Rate Stores, Inc.

Ex. H. Copy of Journal Voucher No. 2362, made as of December 31, 1943 on the books of Simm's Cut Rate.

Ex. I. Copy of General Ledger Surplus Account of Simm's Cut Rate Stores, Inc.

Ex. J. Copies of personal General Ledger Accounts on the books of Simm's Cut Rate Stores, Inc. for Ruben Simon, Meyer Simon and Morris Simon as attached to their respective Bills of Complaint as Ex. J, but herein identified as follows:

In the case of Ruben Simon, as Ex. J–1

In the case of Meyer Simon, as Ex. J–2

In the case of Morris Simon, as Ex. J–3

Ex. K. Copies of Notices of rejection of Claims for Refund addressed to Ruben Simon, Meyer Simon and Morris Simon by the Commissioner of Internal Revenue, herein identified as follows:

In the case of Ruben Simon, as Ex. K–1

In the case of Meyer Simon, as Ex. K–2

In the case of Morris Simon, as Ex. K–3

4. The transactions herein concerned were tried before the Tax Court with respect to the year 1943. A copy of the Tax Court decision, including findings of fact and opinion, is appended, marked Ex. 12 and incorporated herein by reference. Both parties specifically reserve the right to introduce evidence not inconsistent with that decision.

5. Neither the defendant nor any of its representatives challenged the legality of either the lease to Myron M. Landsberg (Exhibit 1) or the lease to Simm's Cut Rate Stores, Inc. (Exhibit C to the Complaints). The lease to Myron M. Landsberg (Exhibit 1) was never changed; and specifically, the rental payments based on percentages of gross sales were never changed. It was agreed that the owners of the realty would receive as rent four and three-fourths (4¾%) percent on Landsberg's sales and four and three-fourths (4¾%) percent on the sales of Simm's Cut Rate Stores, Inc.; the amount paid by Landsberg in excess of 4¾% remained with the corporation as income.

6. The original and amended Partnership Returns for the fiscal year ending October 31, 1943, reflected rent received from the Corporation on the adjusted basis of 4¾% of gross sales. The partnership had actually received during this fiscal year a rental income equal to six (6%) percent of gross sales, and upon examination of the returns, the Revenue Service determined that the rental income that should have been reported as income was this figure of 6% of gross sales.

7. On August 1, 1944, the lease between the corporation and plaintiffs was amended in accordance with the agreement of November 9, 1943 (Board of Directors' Meeting, Exhibit E), adjusting the percentage of rental to plaintiffs on gross sales of the corporation and its tenants from 6% to 4¾%, effective as of November 1, 1942. (See Exhibit G).

8. The corporation files its income tax return on an accrual fiscal year basis of October 31st.

9. The partnership of Simon Bros. files its return upon a cash fiscal year basis of October 31st.

10. The plaintiffs file their Individual Income Tax Returns upon a cash calendar year basis.

11. If the Court decides that plaintiffs should recover, the amounts of the recoveries will be computed by the Inter-

nal Revenue Service. If plaintiffs and the Internal Revenue Service are unable to agree as to the amounts, the issue will be submitted to the Court for determination.

/s/ B. Dave Bushaw

B. Dave Bushaw
Counsel for Plaintiffs
Arnold F. Zeleznik of Counsel

/s/ Fred W. Kaess

Fred W. Kaess
United States Attorney

By: /s/ Elmer L. Pfeifle, Jr.

Elmer L. Pfeifle, Jr., Asst.
U. S. Attorney
Counsel for Defendant

Dated: Dec. 5, 1958.

Opinion of August 29, 1957.

THORNTON, District Judge.

At the pre-trial hearing of these causes there was an indication that there might be present here a question as to collateral estoppel. The position of the Government was that if the earlier Tax Court proceedings in fact operated as a collateral estoppel then the plaintiffs in these three tax-refund cases would be barred from proceeding further. The parties have, therefore, submitted briefs to the Court on the collateral estoppel issue. After consideration of this matter, the Court is unable to conclude that the plaintiffs here are estopped, by the Tax Court holding, from pressing the claims here asserted.

The Tax Court opinion, as we read it, is determinative of the rights of plaintiffs to retroactively adjust, for tax purposes, their income totals for the year 1943 in the light of events taking place in 1944, allegedly pursuant to an agreement made in 1943. The opinion of the Tax Court does not purport to rule on the *merits* of plaintiffs' contention that they are entitled to tax credits for the adjusted incomes. All the Tax Court holds is that plaintiffs are not entitled to get credit by way of lower taxes for 1943 based upon lower incomes than were actually received—the reduced incomes being the result of returns of part of said incomes, in 1944, by the taxpayers to the payer. The Tax Court ruled on method or procedure, and not on merit. The taxpayers here are attempting to obtain credits they believe are due them, by another method or procedure—one not the subject matter of the Tax Court opinion. The Tax Court did not say, nor did it even remotely imply, that plaintiff lessors might not have a right to a deduction on their 1944 tax returns for the money returned to the corporate lessee (payor) in the year 1944. We are not determining this question at this time. That is an issue to be presented for determination in the trial of these cases. All we say here is that we are of the opinion that plaintiffs are not estopped by the Tax Court opinion to pursue the relief here sought. See Yates v. United States, 354 U.S. 298, 335, 77 S.Ct. 1064, 1 L.Ed.2d 1356 for a recent discussion of the doctrine of collateral estoppel.