**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Ruben SIMON, Defendant-Appellee,**

**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Meyer SIMON, Defendant-Appellee,**

**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Morris SIMON, Defendant-Appellee.**
**Nos. 14012–14014.**

United States Court of Appeals.
Sixth Circuit.
Aug. 3, 1960.

Victor A. Altman, Washington, D. C. (Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and James P. Turner, Attys., Dept. of Justice, Washington, D. C., and Fred W. Kaess, U. S. Atty., and Elmer Pfeifle, Jr., Asst. U. S. Atty., Detroit, Mich., on the brief), for appellant.

B. Dave Bushaw, Detroit, Mich. (Arnold F. Zeleznik, Detroit, Mich., on the brief), for appellees.

Before CECIL and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.

WEICK, Circuit Judge.

These three appeals involve identical questions of income tax law with facts that are somewhat complex.

Appellees, Ruben Simon, Meyer Simon and Morris Simon, hereinafter referred to as taxpayers, are equal partners in the firm of Simon Brothers, which was formed on November 1, 1941. On that same date taxpayers also organized Simms' Cut Rate Drugs, Inc., a Michigan corporation. Taxpayers were the sole shareholders, officers and directors of the corporation.

On November 5, 1941 the partnership leased to the corporation certain premises in the City of Pontiac, Michigan upon which the partnership held a lease expiring June 30, 2032. The corporation opened a department store on the premises. The lease from the partnership to the corporation called for the payment of a rental of 6% of the corporation's gross sales.

The corporation reported its income for tax purposes on the accrual basis and on a fiscal year beginning November 1 and ending October 31. The partnership had the same fiscal year but reported on the cash basis. The individual taxpayers were on a cash basis and filed their tax returns on the calendar year.

In the spring of 1943 an Internal Revenue agent commenced an examination of the books of the corporation. He expressed an opinion that the 6% rental deduction might be considered to be excessive. However, no action was taken by Internal Revenue during the corporation's fiscal year 1943 and for the entire year the corporation continued to pay rent at the rate of 6%.

After the close of its fiscal year ending on October 31, 1943, namely, on November 11, 1943, an annual meeting of the Board of Directors of the corporation was held. The minutes contain the following resolution agreed upon at the meeting:

"The President, Meyer Simon, presided and stated that one of the purposes of this meeting was to consider and discuss the possibility that the Treasury Department might not recognize the entire amount of rent paid under the corporation's lease from Meyer, Morris and Ruben Simon, as a proper corporate deduction for income tax purposes. The president stated further that in the event of disallowance of any portion of the amount so deducted for rent, the corporation should be entitled to receive a refund from the lessors of the amount of such disallowance.

"The matter was thereupon discussed with the lessors who were all present and who agreed to make refund of any amount disallowed in the rental deduction for the fiscal year from November 1, 1942 to October 31, 1943, but that there should be no refund and that the matter was to be considered closed as to the fiscal year from November 1, 1941 to October 31, 1942, the corporation to absorb any loss during the latter period. It was thereupon understood and agreed that the lessors should refund to the corporation as of October 31, 1943, such portion of the rent for the fiscal year ending that date as might be disallowed by the Treasury Department, such adjustment to be made when the amount had been determined. Counsel for the corporation was instructed to draw such amendments to the lease governing the relationship to the parties hereafter, as might be necessary; and the President and Secretary were, by resolution unanimously adopted, authorized to execute such amendment on behalf of the corporation."

On November 12, 1943 the corporation received a 30 day letter in which the Commissioner stated that he proposed to disallow a portion of the rental deduction as being excessive. The corporation protested the disallowance, and a conference on the matter was held January 31, 1944. At that conference it was agreed that all amounts deducted by the corporation as rental payments to the partnership in excess of 4¾% should be disallowed as excessive.

On August 1, 1944 the lease was modified by written agreement entered into between the partnership and the corporation retroactive to November 1, 1942 providing for reduction of the rent from 6% of gross sales to 4¾% of gross sales and that taxpayers would make refunds of the rentals received during fiscal 1943 in excess of 4¾%.

On November 11, 1944 the corporation filed an amended corporation income tax return for the fiscal year 1943 adjusting the corporation's rental deduction from 6% of gross sales to 4¾%, which was the percentage approved by the Commissioner for the fiscal year 1942.

At some time after January 31, 1944 the personal accounts of taxpayers on the books of the corporation were debited as of December 31, 1943 with an amount representing the plaintiffs' distributive share of the difference between a rental based on 6% and 4¾% of the corporation's gross sales from August 1, 1942 to July 31, 1943. At the same time a corresponding entry was made in the surplus account of the corporation crediting that account with an amount equal to the total debits to taxpayers' personal accounts.

The partnership return for fiscal year 1943, which closed October 31, 1943, was filed two months late on March 15, 1944. The partnership reported rental income from the corporation at 4¾%. Taxpayers then filed their individual returns for the calendar year 1943 including in their personal incomes a one-third distributive share of the amount reported as income in the partnership return. The Commissioner issued deficiency notices to taxpayers on the theory that the partnership had actually received rental income from the corporation in the amount of 6% of gross sales during the fiscal year 1943 and taxpayers' personal returns should have reflected that amount.

Taxpayers petitioned the Tax Court to review the deficiencies. They contended that the rent had been received conditionally because of an oral agreement between the partnership and the corporation providing for the refund of excessive rent. The Tax Court sustained the Commissioner's determination, Simon v. Commissioner, 11 T.C. 227. The heart of the Tax Court's decision is found in the following two excerpts:

"But we can find no evidence of any such oral agreement prior to the close of the fiscal year. Since the written agreement occurred subsequent to the close of the partnership's fiscal year, it can have no retroactive effect to reduce the partnership's rental income based on 6 per cent of gross sales of the corporation which was received during that year.

\*    \*    \*    \*    \*    \*

"The fact that there was in this case an agreement to make a refund of excess rent and an execution thereof prior to the filing of the partnership return can be of no significance in reporting the true income received during the partnership fiscal year previously ended. A partnership return must reflect only those events which occurred during the past fiscal year and must overlook any later events of which the part-

ners became cognizant before the returns were filed."

On or about March 15, 1945 taxpayers filed their personal income tax returns for calendar year 1944. On March 3, 1948 they filed claims for refund on the ground that they were entitled to a deduction from income in 1944 in the amount of the refunded rentals. On August 25, 1950 the Commissioner denied the claimed refunds.

On August 20, 1952 taxpayers brought suit in the District Court to recover the claimed refunds. The District Court, sitting without a jury, consolidated the cases for trial and on stipulated facts rendered judgment for taxpayers. It is from that decision the Government has appealed.

■    The first point which the Government urges is that the decision of the Tax Court was binding on the District Court in this action. From that premise the Government argues that as the Tax Court held that taxpayers unconditionally received the rental income at 6% the District Court committed error in holding otherwise. The Government contends that under the doctrine of collateral estoppel the District Court was precluded from making the findings challenged.

The principal case upon which the Government relies clearly shows that collateral estoppel has but limited application here. In Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, the following guides for the application of collateral estoppel were enunciated:

(1) "If [a] later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit" (333 U.S. at page 598, 68 S.Ct. at page 720).

(2) "Where two cases involve income taxes in different taxable years, collateral estoppel must be used with

its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged" (333 U.S. at pages 599–600, 68 S.Ct. at page 720).

(3) "If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation" (333 U.S. at page 600, 68 S.Ct. at page 721).

(4) "If the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case" (333 U.S. at page 601, 68 S.Ct. at page 721).

(5) "Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment" (333 U.S. at pages 601–602, 68 S.Ct. at page 621).

See also Yates v. United States, 1957, 354 U.S. 298, 335, 77 S.Ct. 1064, 1 L.Ed. 2d 1356; United States v. International Building Co., 1953, 345 U.S. 502, 504, 73 S.Ct. 807, 97 L.Ed. 1182; Cromwell v. County of Sac, 1876, 94 U.S. 351, 353, 24 L.Ed. 195; Alexander v. Commissioner, 5 Cir., 1955, 224 F.2d 788, 793; Fairmont Aluminum Co. v. Commissioner, 4 Cir., 1955, 222 F.2d 622, 625, certiorari denied 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748.

Was the problem considered by the Tax Court so similar to that considered by the District Court as to create a collateral estoppel? The principal question considered by the Tax Court was:

"Must a partnership report as income for fiscal year 1943 amounts received during fiscal year 1943 which it refunded in fiscal year 1944 under the terms of an agreement entered into in fiscal year 1944."

The principal question considered by the District Court was:

"Is a partnership entitled to a deduction in fiscal year 1944 for monies which it received in fiscal year 1943 and refunded in fiscal year 1944 under the terms of an agreement entered into in fiscal year 1944?"

The dissimilarity of the questions presented is instantly obvious. Referring back to the basis of the Tax Court's decision—that the amounts must be considered income to the partnership in fiscal year 1943 because the agreement and refund occurred in fiscal 1944—make it doubly clear that collateral estoppel did not prevent the District Court from deciding whether the agreement made in 1944 justified the deduction claimed in 1944.

The Tax Court decision was binding and determinative only of the issue that the rentals were unconditionally paid in the fiscal year 1943 and that no agreement to refund the rentals was made in that year.

■ The controlling issue in this case is a relatively simple one and presents solely a question of law. Were plaintiffs under obligation to repay the monies refunded, so as to bring this case within the equitable "claim of right" doctrine of Haberkorn v. United States, 6 Cir., 1949, 173 F.2d 587? In Haberkorn, an employee of a corporation was compensated based on a percentage of sales. It was discovered in one tax year that he had been overpaid in a previous year due to a mistake in computing sales. The Court held that he was obligated to return the amount of the overpayment and, therefore, would be entitled to a deduction in the year in which he refunded the money. The holding of Haberkorn was correctly stated by the District Court as [172 F.Supp. 953, 954]:

"Where the individuals received the funds under claim of right and in subsequent years came under obligation to repay the money, they are entitled to deductions in the year of repayment."

The Government accedes to the correctness of this statement, but contends that "it has absolutely no application where a taxpayer returns to the payer income which he has received in an earlier year when there is no legal or moral obligation requiring its return."

The word "obligation" has been interpreted both liberally and strictly by the courts.

In Anderson v. Bowers, D.C.W.D.S.C. 1954, 117 F.Supp. 884, the Court held that a taxpayer was obligated to return an excessive executrix' commission to the estate of her deceased husband, and was entitled to a deduction in the year of refund. The Commissioner had disallowed the excessive amount in determining the taxability of the estate. The return, however, was made voluntarily and the executrix was the sole beneficiary under her husband's will. Although the Court considered the excessive distribution to be unlawful, it is apparent that no issue would have been made of it in the state court had it not been returned, for the widow-executrix was the sole beneficiary and the money came back to her under the will.

In Schramm v. United States, 1941, 36 F.Supp. 1021, 93 Ct.Cl. 181, a corporation had been liquidated and the assets distributed to its shareholders. Thereafter a deficiency was assessed against the corporation and, it being without assets, the shareholders voluntarily returned a sufficient amount to the corporation to enable it to pay the assessment and did not contest the deficiency. The Court of Claims spoke of the shareholders as having been obligated to make the refund.

Curran Realty Co., Inc. v. Commissioner, 15 T.C. 341 is not a claim of right case, but does concern an "obligation" to refund income received. In that case the same individuals controlled two corporations, one of which was lessor and the other lessee of certain property. Following a determination by the Commissioner that the rental paid by lessee was excessive, lessor and lessee agreed that lessor would refund the excessive amount. The adjusting entry reflecting the refund was made in the same accounting and tax year as the income had been accrued on the lessor's books. In considering whether the amount refunded was income to the lessor the Tax Court held that the lessor had been "obligated" to make the refund, and was entitled to exclude that amount from its taxable income for the year.

In favor of a stricter interpretation of "obligation" are the decisions in Crellin's Estate v. Commissioner, 9 Cir., 1953, 203 F.2d 812, certiorari denied 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381; Lewis v. United States, D.C.Colo.1936, 17 F.Supp. 543; Louden Machinery Co. v. United States, 1932, 57 F.2d 911, 74 Ct.Cl. 582 and Swanson v. Commissioner, 1925, 2 B.T.A. 1112. See also: Leicht v. Commissioner, 8 Cir., 1943, 137 F.2d 433; National Piano Mfg. Co. v. Burnet, 1931, 60 App.D.C. 160, 50 F.2d 310.

In Crellin's Estate v. Commissioner, supra, the Court held that a dividend refunded by stockholders to a corporation, where the corporation had attempted a rescission ineffective under California law, was voluntary and not as a result of any obligation.

In Louden Machinery v. United States, supra, a corporation by resolution agreed to refund interest payments which it had received in prior years on notes executed by certain of its principal shareholders. The Court denied the corporation a deduction for the amounts refunded, stating that it was under no obligation to do so as the interest had been legally collected under enforceable contracts entered into by the respective shareholders.

In Lewis v. United States, supra, suits had been instituted against three individuals to recover alleged excessive salaries received by them in prior years from a then insolvent Saving & Building Association. The suits were settled on the

advice of counsel and the individuals sought deductions for the amounts paid in settlement. The Court held that there had been no obligation to make the settlements and hence no claim for deduction.

The District Court relied on Smucker v. Commissioner, 16 Prentice-Hall T.C. Memo. Dec. 47,265, affirmed by this Court in a short per curiam at 6 Cir., 1948, 170 F.2d 147, in rendering judgment for taxpayers.

The facts in Smucker are dissimilar to the facts of this case. It did not involve the "claim of right" doctrine. In Smucker there was a repayment by shareholders of bonuses paid by a corporation within a few days after receipt and within the same tax year. The repayment was made pursuant to an agreement entered into prior thereto. We consider Smucker to present a situation of a virtually integrated payment-refund transaction. It is a case peculiar unto itself factually and we are unwilling to extend it beyond the narrow confines of its own facts.

In the present case, when taxpayers received the rentals from their wholly owned corporation, they were under no legal or moral obligation to pay them back. On the contrary, the written lease obligated the corporation to pay taxpayers the stipulated rentals. The payment to them was unconditional, as was adjudicated by the Tax Court. Taxpayers were then the sole and absolute owners of the funds so paid.

But taxpayers claim that in the following year, when they refunded the rentals to the corporation, they were under legal obligation to do so because of the provisions of the 1943 directors' resolution before quoted and the modification of lease agreement entered into in 1944. As previously pointed out, these agreements were made *after* the fiscal year in which the rentals had been unconditionally paid.

■ Taxpayers were undoubtedly motivated in entering into the agreement with the corporation to reduce the lease rentals in order to eliminate any future controversy with the Commissioner over excessive rentals. We fail to see any business purpose in making the modification agreement retroactive so as to provide for refunding of rentals already paid in a prior tax year. The sole reason, in our judgment, was to obtain a tax advantage either for the corporation, or taxpayers or both. This is not sufficient to justify the deduction claimed as payment of an "obligation" within the sense of claim of right. We agree with the decisions previously discussed which hold that no "obligation" arises from a voluntary agreement to repay monies which the taxpayer would otherwise have an absolute and unconditional right to retain.

The excessive portions of the rental could have been regarded as dividends paid to the taxpayer under the guise of rentals. See: Limericks, Inc. v. Commissioner, 5 Cir., 165 F.2d 483. The voluntary refunding of dividends to the corporation which paid them does not give rise to a deduction. Cf. Crellin's Estate v. Commissioner, supra.

In our judgment, in the circumstances of this case, the resolution of the directors followed by the modification of lease agreement do not create an obligation recognizable under the "claim of right" doctrine and do not justify the deductions claimed here. The refund by taxpayers can only be regarded as a contribution to capital. Cf. Bratton v. Commissioner, 6 Cir., 217 F.2d 486, 489; Carroll-Mc-Creary Co. v. Commissioner, 2 Cir., 124 F.2d 303.

■■ The deductions cannot be considered as necessary expenses in carrying on a trade or business or as losses within the meaning of the statute. 26 U.S.C. § 23 (1952 ed.). In Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, at page 594, 63 S.Ct. 1279, 1282, 87 L.Ed. 1607, the Court said:

> "The mere fact that the expense was incurred under contractual obligation does not of course make it the equivalent of a rightful deduction under § 23(a)."

See also Welch v. Helvering, 1933, 290 U.S. 111, 114, 54 S.Ct. 8, 78 L.Ed. 212; National Piano Mfg. Co. v. Burnet, supra, Sharon Herald Co. v. Granger, 3 Cir., 195 F.2d 890.

The burden was on the taxpayers to establish that the deductions claimed were authorized by the statute. New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. They have failed to meet this burden.

The judgment of the District Court is reversed in each case and the cause remanded with instructions to dismiss the complaint.