John F. **KAPPEL** and Edna I. Kappel,
Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

**William J. KAPPEL and Sarah M.**
**Kappel, Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. Nos. 64–1091, 64–1092.**

United States District Court
W. D. Pennsylvania.

March 22, 1968.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr., and Edward J. Snyder, Department of Justice, Washington, D. C., for defendant.

Robert G. MacAlister, Frank E. Coho, M. J. Arnd, John A. Metz, Jr., Pittsburgh, Pa., for plaintiffs.

## OPINION

WEBER, District Judge.

### FINDINGS OF FACT

1. These two consolidated actions are suits for the recovery of overpayment of individual Federal Income Taxes for the year 1960.

2. Plaintiffs are John F. Kappel and his wife, and William J. Kappel and his wife, each married couple having filed joint United States Income Tax returns for the calendar year 1960, on or before April 15, 1961. The operative facts concern only the husband plaintiffs. References to Plaintiffs hereinafter will refer only to husband plaintiffs.

3. Each of plaintiffs' 1960 income tax returns reported an overpayment of tax beyond the amount due as follows:

John F. Kappel and wife $120,334.18

William J. Kappel and wife 261,990.87

4. The above-claimed overpayments were based upon a claim under § 1341, Internal Revenue Code of 1954.

5. The Internal Revenue Service refused to acknowledge such overpayments and demanded payments thereof which plaintiffs paid.

6. Plaintiffs' timely claims for refunds were denied by the Internal Revenue Service and the present actions were timely filed.

7. Plaintiffs were officers, directors, principal stockholders and employees in four corporations each of which maintained Employees Pension Plans since 1936 and 1941 in which plaintiffs were participating employees.

8. Plaintiffs were members of the Board of Trustees of each of the Employees Pension Plans. Such trustees were chosen by the Board of Directors of each corporation.

9. In each instance the settlor corporations funded the trusts and the trustees contracted for separate annuity policies on each participating employee, including the plaintiffs, in ten different life insurance companies.

10. Ownership of the annuity policies on all beneficiaries of all pension trusts was vested in the trustees of the particular pension trust of the employing corporation of each beneficiary.

11. Each pension trust contained provisions that:

 (a) Pension benefits could not be paid to a beneficiary in one lump sum;

 (b) No beneficiary shall have any power of anticipation of the payments provided in the annuity policy;

 (c) No sale, assignment, transfer, anticipation, commutation, or beneficiary, and all payments must be made to a beneficiary personally, or to a beneficiary designated to receive benefits at his death;

 (d) When an employee reaches the age of 65, or on his earlier retirement, the trustees shall arrange to have the benefits of his annuity paid to him in accordance with the options of the policy;

 (e) The trustees reserved the right in their discretion to terminate the trust or amend it, except that they could not deprive any employee of any rights to which he became vested under the pension plan.

12. Each plaintiff was over sixty-five years of age at the time of the withdrawals made in 1954–58, and each plain-

tiff was still an active employee of the corporations in which he participated under the pension plans.

13. The pension plans were originally proposed to plaintiffs' employer corporations by Jules Polachek, a Pittsburgh life insurance underwriter, who held himself out as and was generally reputed to be an expert in the field of corporate pension plans. The trustees relied upon his advice and assistance at all times. He prepared the Trust Agreements, and provided for the purchase by Trustees of the annuities for each beneficiary from life insurance companies that he represented. Polachek collected corporate and employee contributions, transmitted them to the companies, processed applications and determined questions of coverage.

14. In 1954, Polachek suggested to the two plaintiffs that if they, without retiring from employment, would agree to the distribution of the proceeds of the annuity policies held by the Trustees for their benefit, and the reinvestment of such benefits in deferred annuities naming members of their families as beneficiaries, they would incur no Federal Tax liability for income, gift or estate taxes.

15. Relying on the advice of Polachek, application was made on behalf of the Trustees, signed by John F. Kappel, plaintiff herein, or William D. Kappel (son of William J. Kappel, plaintiff), in their capacity as Trust Secretaries of the various pension trusts, to the various life insurance companies for the proceeds of the annuities on the lives of the plaintiffs. The applications were processed and forwarded through Jules Polachek.

16. There was no consent, joinder or formal action by all the Trustees of any Pension Trust involved, or a majority of them, in such application for payment of the proceeds of the annuities.

17. Each of the ten insurance companies paid the proceeds of the annuity policies upon such application. Payment was made by twenty-three separate checks. Eighteen of the checks, made payable to the pension trusts, were endorsed solely by John F. Kappel, plaintiff herein as Trust Secretary. Two of the checks were endorsed solely by William D. Kappel (son of plaintiff William J. Kappel) as Trust Secretary. One of the checks was endorsed by John F. Kappel and William D. Kappel, as Trustees. Two checks, issued by New England Mutual Life Insurance Company were endorsed by several of the Trustees, describing themselves in the endorsement as the Trustees of the two pension trusts involved.

18. The endorsement on all of said checks made them payable directly to Dominion Life Assurance Company or American United Life Insurance Company in accordance with instructions of Jules Polachek, and said checks were delivered to Polachek who forwarded them to the respective insurance companies and secured the issuance of deferred annuity contracts on the lives of members of the families of Plaintiffs according to the respective shares of each plaintiff in such proceeds. Polachek received commissions from the issuing insurance companies as agent.

19. The above transactions occurred in the years 1954, 1955, 1957 and 1958. No report of receipt of the proceeds of these pension trust annuities was made in either of plaintiffs' Federal Income Tax returns for the years in which the policies were cancelled and the proceeds used to purchase annuities on the lives of members of plaintiffs' families.

20. Late in 1958 the Internal Revenue Service notified plaintiffs of its intention to assess deficiencies on their income taxes with respect to the years 1954, 1955, 1957 and 1958.

21. Upon the Internal Revenue Service's claim for individual income taxes on the proceeds of the pension policies, plaintiffs engaged legal counsel and accounting representatives who advised plaintiffs that the distribution of pension policy benefits to them were in violation of the provisions of the Pension

Trust agreements and that plaintiffs were obliged to refund the payments to the Pension Trusts concerned.

22. Legal counsel for plaintiffs also informed the Trustees of the Pension Plans involved, that the proceeds of the insurance policies paid to plaintiffs had been paid contrary to the terms of the Pension Trust agreements and that the trustees were under a legal duty to require repayment. Upon receipt of such advice, the Trustees authorized legal counsel to take such action as was necessary to secure restoration of the funds to the Pension Trusts.

23. The violations of the Pension Trust Agreements involved in such payments were violations of the prohibition against lump sum payment and violation of the maximum monthly installment payments provision.

24. Plaintiffs, as beneficiaries of the Pension Trusts, consented to any breach of the terms of the Trust Agreement. Settlors also consented by the acts of their principal officers and stockholders.

25. No impairment or injury to the interest of any other beneficiary in the trust *res* resulted from such payment.

26. Thereafter, legal counsel, acting on behalf of the Trustees, by demands, negotiation and threats of litigation, made against Dominion Life Assurance Company and American United Life Insurance Company, secured the cancellation of the annuity contracts on lives of members of plaintiffs' families which had been purchased with the funds received by plaintiffs from the Pension Trusts. The two life insurance companies repaid the funds which they had received from plaintiffs.

27. No legal proceedings were instituted by any beneficiaries against the Trustees or Plaintiffs, and no legal proceedings were instituted by Trustees or any of the Trustees to require adherence to the Trust Agreement provisions, or to surcharge, Trustees or to require repayment by Plaintiffs of the funds received by them from the Pension Trusts.

28. In 1960, plaintiffs, with funds of their own, and pursuant to advice of legal counsel, restored to the Trustees the funds withdrawn in 1954, 1955, 1957 and 1958 from the Pension Trusts. Upon receipt of these funds the Trustees of the Pennsylvania trusts used them to acquire annuities on the lives of plaintiffs to be owned and held in the Pension Trust.

29. In 1961, upon timely filing their individual income tax returns for the calendar year 1960, the plaintiffs claimed an overpayment of taxes beyond the amount due as follows:

John F. and Edna I. Kappel $120,334.18
William J. and Sarah M. Kappel 261,990.87

based upon taxes paid upon the funds received from the Pension Trusts in 1954, 1955, 1957 and 1958.

30. Pursuant to a waiver of assessment filed in 1960, in 1961 the plaintiffs paid a substantial amount of the additional tax due for the years 1954, 1955, 1957 and 1958, by reason of their receipt of the proceeds of insurance policies from the Pension Trusts in those years. The balance of said additional tax due was paid in 1963. These payments were made pursuant to assessment.

31. Plaintiffs' claims here are limited to tax liability which plaintiffs have paid on the distributions made to them from the Pension Trusts which are the product of the *employer-funded* portions of their 1954, 1955, 1957 and 1958 withdrawals. No claim is made in the present suit for any tax paid on other funds received from the pension trusts which are the product of *employee-funded* portions of the insurance policies.

32. The repayments made by the plaintiffs to the pension trusts in 1960 were reinvested by the Trustees in new annuity policies for the benefit of plaintiffs and reestablished the original positions of plaintiffs in the Pension Trusts.

## DISCUSSION

Plaintiffs' claims are based on the "claim of right" doctrine as established in North American Oil Consolidated v.

Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932) and codified in the provisions of Section 1341 of the Internal Revenue Code of 1954, as amended, which in its pertinent parts, provides as follows:

" § 1341. *COMPUTATION OF TAX WHERE TAXPAYER RE-STORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT.*

(a) General rule.—If—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and"

\* \* \* \* \* \*

The pertinent Regulation is:

Treasury Regulations on Income Tax (1954 Code)

"§ 1.1341–1

(2) For the purpose of this section 'income included under a claim of right' means an item included in gross income because it appeared from all of the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item, and 'restoration to another' means a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof)."

■ This is a civil suit for refund of taxes paid. The burden of proof rests upon the plaintiffs. New Colonial Ice Company v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

■■ The parties dispute whether § 1341 is "exemptive" or "remedial" legislation; exemptive legislation requiring strict adherence to its terms, remedial legislation allowing liberal construction to effect the objectives sought by the legislature. The doctrine is judicial in origin, North American Oil Consolidated v. Burnet, supra; the statute is remedial to relieve the taxpayer from inequities resulting from the strict application of the judicial doctrine as in United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951). See Senate Committee Report (83rd Congress, 2nd Sess. S.Rep.No. 1622 (1954) U.S. Code Cong. & Admin. News 1954, p. 4629) 118. Because this suit involves the right to the deduction, rather than the mechanics of taking the deduction, a strict application is warranted. Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

■ Nevertheless, while the statute is remedial only in the limited sense, the "claim of right" doctrine has been described as an "equitable" doctrine. United States v. Simon, 281 F.2d 520 (6th Cir., 1960).

To be entitled to relief under § 1341, plaintiffs have the burden of proving:

(1) That during the years 1954, 1955, 1957 and 1958, when the monies were withdrawn by them from the pension trusts they had what appeared to them at the time an unrestricted right to the monies received.

(2) That after the close of the years in which the monies were received it was established that they did not have an unrestricted right to the monies received.

(3) That they were involuntarily required to pay back the monies received earlier.

■ No impediment to plaintiffs' claim arises because of the fact that plaintiffs did not include the monies received from the trustee in their income tax returns for the years 1954, 1955,

1957, and 1958, because they have subsequently paid the additional income tax required for those years. This payment is a condition to the claim for deduction which forms the bases of this suit.

Before considering the first two of the above outlined essential elements, we think it helpful to our determination to consider the third factor, the conditions under which plaintiffs made their repayment to the Pension Trust in 1960. If this was done under an obligation to repay, the other elements are established for the purposes of this case.

The statute does not define the conditions of restoration or repayment except to say that it must be "established" that taxpayer did not have an unrestricted right to the item. The Regulations state " 'restoration to another' means a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof)."

Neither the Code nor the Regulations use the language of an obligation to repay. That requirement was judicially developed prior to the adoption of the Code. Perhaps its fullest expression appears in Crellin's Estate v. Commissioner of Internal Revenue, 203 F.2d 812 (9th Cir., 1953), cert. den. 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381. There a corporation declared and paid its stockholders a dividend under the mistaken belief that it would otherwise be subject to a surtax. Upon discovery of its mistake the corporation persuaded its shareholders to refund the dividend to decrease their own individual income tax liability. The corporation passed a resolution rescinding the dividend. A deduction in the year of repayment was denied the shareholders. The court found that the shareholders had received the dividend under a claim of right, without restriction, under the rule established in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), and that repayment was not compelled on them. The corporation having declared and paid the dividend was without power to recapture it without the shareholders consent; thus there was no obligation to repay.

"On the other hand, a so-called 'recission' which does not have the force and effect in law of compelling the return of payments made under a dividend declaration, but which in reality is a voluntary act, cannot create a deduction in any year." 203 F.2d at p. 814.

"In short, for tax purposes, it is that which the holding company could have compelled, not that in which the stockholders were willing to acquiesce, which controls. Otherwise, the taxpayers in this case could 'lift the federal tax-hand' to suit their convenience. See Leicht v. C. I. R., 8 Cir., 1943, 137 F.2d 433, 435. We recognize that action may be taken by a party which results in a tax saving providing the action is authorized by law. But substance prevails over form. The consent given by petitioners and relied upon by them as justifying 'recission' was in fact no more than a voluntary payment by stockholders." 203 F.2d at p. 815.

Our examination of the cases reveals, that an element of compulsion of repayment is present in the decisions under the claim of right doctrine. In United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951), where the relief was denied to the taxpayer solely because he was limited to a deduction in the year of repayment, nevertheless the obligation to repay was established by litigation and a judgment rendered against the taxpayer.

The compulsion need not be the judgment of a court, but there must be a clear showing, under State statutes or decisions, of the taxpayer's liability to repay, Joseph S. Pike, 44 T.C. 787. In *Pike*, the Tax Court denied relief under Section 1341 because, inter alia, he was not compelled by legal process to make the payment, and had failed to prove that he was not entitled

to retain the item received; nevertheless his payment was not voluntary in the sense of being gratuitous, being made for a bona fide business purpose, and the Tax Court allowed the deduction as an ordinary and necessary business expense under Section 162(a).

While stating that it did not intend to hold that a payment was involuntary only if pursuant to a judgment, Revenue Ruling 58–456 allowed a Section 1341 deduction where repayment was pursuant to a judgment secured against a corporation and its stockholders by the Federal Housing Administrator for improper disposition of mortgage proceeds. However, it was noted that, "for example, if repayment is made pursuant to a demand by the Federal Housing Administration under circumstances entitling such Administration to enforce the demand by legal action in the absence of compliance, such repayment would be considered as involuntary."

The nature of the compulsion is further illustrated in Haberkorn v. United States, 173 F.2d 587 (6th Cir., 1949), decided before the 1954 Code under the rule of North American Oil Consolidated v. Burnet, supra. There an employee had been paid a salary and bonus of a percentage of net income in 1942 upon which the income tax was paid. In 1944, the employer discovered an error in the calculation of 1942 profits, and charged the employee's account with the overpayment. The court held that a debtor-creditor relationship was established by this action which created an obligation to repay in that year the overpayment which the taxpayer had received without restriction and absolutely in 1942.

It has been held that "a condition precedent to the applicability of this section (Section 1341) is the ability of the taxpayer to take a deduction in the year of repayment under other provisions of the Code." National Life and Accident Insurance Co. v. United States, 244 F.Supp. 135 (M.D.Tenn. 1965). This conclusion is supported by that court by the pattern of the statutory scheme of deductions allowable, the legislative intent to give relief by allowing the deduction in the year of repayment, and the specific use of the word "deduction" in Section 1341, and in Regulations 1.1341–1.

The same conclusion is urged upon us by the holding of United States v. Simon, 281 F.2d 520 (6th Cir., 1960). There a partnership was the owner of real estate which it leased to a corporation whose stock was wholly owned by the partnership. When the Internal Revenue Service determined that the rental payment by the corporation was excessive the lessor refunded to the corporation the excess over the rental deduction allowed in prior years. The court found that when the rental was refunded, taxpayers were under no legal or moral obligation to do so. It also found:

"We fail to see any business purpose in making the modification agreement retroactive so as to provide for refunding of rentals already paid in a prior tax year. The sole reason, in our judgment, was to obtain a tax advantage either for the corporation, or taxpayers or both. This is not sufficient to justify the deduction claimed as payment of an 'obligation' within the sense of claim of right. We agree with the decisions previously discussed which hold that no 'obligation' arises from a voluntary agreement to repay monies which the taxpayer would otherwise have an absolute and unconditional right to retain." (p. 526)

The court also found that the deductions could not be considered as necessary expenses in carrying on a trade or business within the meaning of the statute, 26 U.S.C. § 23 (1954 Code, Section 163) because it served no business purpose.

The defendant has urged the holding in Commissioner of Internal Revenue v. Gilt Edge Textile Corp. 173 F.2d 801 (3rd Cir., 1949) as strong authority for denial of the deduction. *Gilt Edge* concerned a payment by a corporation to

its president to enable him to satisfy a judgment against him personally because of mismanagement of an estate. The mismanagement included a preferential transfer of an estate asset to the corporation. The Court of Appeals in reversing the Tax Court's allowance of a deduction, found the payment voluntary with no threat of litigation being made against the corporation, without regard to the defense which the corporation might impose to any such claim, without business benefit to the corporation, without regard to the possibility of the corporation securing indemnification for any payment compelled upon it, and even without the support of moral obligation. However, *Gilt Edge* must be restricted to its actual holding. There was no "claim of right" basis for the deduction asserted; the deduction was claimed and disallowed solely under Section 23(f) Losses by Corporations, for a loss sustained during the taxable year and not compensated by insurance or otherwise. (1954 Code Sec. 165). The court specifically limited consideration of the claim to the fixed scope of applicability of Sec. 23(f). At no point was the "claim of right" doctrine considered.

A great variety of cases have been cited to the court as illustrations of both the voluntary and involuntary nature of such repayments. Some of them do not concern deductions under "claim of right" payments, but rather deal with the allowance of deductions for repayments made during the same tax year as received, or allowance of deductions for repayments in years subsequent to receipt under other sections of the Code. They present little controlling authority on the question at issue here, except for the common theme of determining whether payment is made under obligation, and whether it is made for a purpose otherwise allowable for deduction under other sections of the Code, that is, for a bona fide business purpose, or a benefit to the taxpayer other than a tax saving.

It is of interest to note the practical effect of the repayment here by plaintiffs. By their repayment to the Pension Trust, they relinquished nothing but the present power of absolute control. The monies repaid to the Trust were immediately reinvested in insurance annuity contracts in their names and for their benefit, which could be repaid to them under the terms of the Trust Indenture upon their request, in installments, or paid to their beneficiaries upon their death. Their repayment was a postponement of present enjoyment, but no loss in their vested rights under the pension plan. We are disturbed by classification of this as "repayment", for the funds repaid will be held for their benefit, and will not go to the benefit or enjoyment of any other party.

■ We find no business considerations or economic benefits in this case sufficient to support any deduction under any other section of the Code. Our inquiry then is directed to the question of whether there was an enforceable obligation to repay.

■ The obligation to repay must be examined from the evidence in this case, and under the applicable law of Pennsylvania, the situs of the Pension Trusts. There is no evidence here that plaintiffs were forced to repay by judicial process. No judicial process was instituted. There was no specific threat of litigation. At most the evidence shows that the Trustees, which included the plaintiffs, instructed counsel, which was also counsel for the plaintiffs, to undertake the steps necessary to see that the Pension Trust was administered according to its terms and according to law. The counsel took elaborate, extensive and thorough steps to see that matters were restored to the status in which they were before the withdrawals. This included threats of litigation against insurance companies which had received the trust proceeds to invest in annuity contracts for taxpayer's relatives, under the doctrine of tracing funds impressed with a trust. They were successful in

restoring the status quo after what appears to have been a monumental effort.

But under the law of Pennsylvania relating to trust administration, what compulsion could have been placed upon plaintiffs to restore? They had not impaired the trust *res* by withdrawing their funds; each individual beneficiary's share was administered as a separate trust. No other beneficiary suffered any harm, and no beneficiary had standing to sue, either by suit against the beneficiaries directly, or against the Trustees. Similarly, the Trustees and the settlors had acquiesced in the violation of the trust terms, they could not sue as trustees or settlors, nor could they sue on behalf of any beneficiary because no beneficiary had suffered harm. See II, Scott on Trusts, 2d Ed. Section 205; Restatement, Trusts, 2d Section 256.

We have found no Pennsylvania cases where a beneficiary has been held liable to repay in the absence of a loss to other beneficiaries.[1]

Plaintiffs have cited cases from Pennsylvania that indicate that a trust cannot be altered by the agreement of the Trustees and all beneficiaries. But these all involve the elements of testamentary trusts, where the court is motivated by the purpose of carrying out the testator's intent, see Cannistra's Estate, 384 Pa. 605, 121 A.2d 157 (1956). Grote's Estate, 390 Pa. 261, 135 A.2d 383 (1957), was not technically a testamentary trust, but an *inter vivos* trust where the settlor had died, but the same rationale determined that decision. In the present case we not only have *inter vivos* trusts, but the beneficiaries were the controlling officers and stockholders of the settlors, and they reserved to the trustees, including themselves and others over whom they held a power of control, the right to alter, amend or terminate the Pension Trust. They had passed the age of eligibility, their rights were vested, their enjoyment of the benefits was subject to their own option.

Under these facts, it is difficult to find any power of compulsion. Although moral obligation has been rejected as a basis allowing deduction for repayment, see United States v. Simon, supra, we cannot find any moral obligation here in the sense of an obligation to restore to another that which he has lost but cannot recover by legal action.

 We, therefore, conclude that the evidence fails to prove that the plaintiffs made the payments in question under any obligation to repay.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1346(a) (1).

2. The payments made by plaintiffs to the Trustees of the several Pension Trusts in 1960, for which a claim for deduction is made in this case, were not made under any obligation of repayment because it was established in 1960 that plaintiffs did not have an unrestricted right to the income received from this source in prior years.

3. Plaintiffs' claims for relief under 26 U.S.C. § 1341 have not been established by a preponderance of evidence in this case.

4. Judgment shall be entered in each of the above cases for Defendant upon the claim for relief under 26 U.S.C. § 1341, dismissing the complaint with prejudice and awarding costs to the Defendant.

1. In Maloney v. Glosser, 427 Pa. 548, 235 A.2d 607 (1967), the trial court ordered repayment as incidental to injunctive relief to prevent further improper diminution of the trust funds, and because the payment was to the detriment of the Trust.