**CAL–FARM INSURANCE COMPANY, a California corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. S–84–0157 MLS.**

United States District Court, E.D. California.

Sept. 5, 1986.

Forrest A. Plant, William B. Shubb, William W. Sumner, Diepenbrock, Wulff, Plant & Hannegan, Thomas F. Olsen, Gen. Counsel (Cal-Farm), Sacramento, Cal., for plaintiff.

Yoshinori H.T. Himel, Asst. U.S. Atty., Sacramento, Cal., Scott A. Milburn, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

MILTON L. SCHWARTZ, District Judge.

On November 16, 1984, plaintiff and defendant filed cross-motions for summary judgment. The court took the motions under submission and now renders its decision.

### I. *Factual Background*

In 1975, plaintiff/taxpayer Cal-Farm Insurance Company claimed a deduction of $1,471,635 for a payment to its subsidiary Cal-Farm Life Insurance Company. The two companies were formed by the California Farm Bureau Federation, a non-profit organization, to provide insurance to its members at the lowest possible cost. The payment made in 1975 was for alleged overcharges of shared office expenses for the years 1968 through 1972. The deduction resulted in substantial tax refunds to plaintiff. After auditing plaintiff's 1975 tax return, defendant Internal Revenue Service ("I.R.S.") disallowed the deduction and assessed tax deficiencies against plaintiff. Plaintiff paid the assessments and filed this suit for refund.

The allocation of common expenses between plaintiff and its subsidiary has undergone several changes during their history. Plaintiff was established by the California Farm Bureau Federation in 1948. Cal-Farm Life ("Life") was incorporated in 1950 as an affiliate of plaintiff. Since Life's inception, the companies agreed to share such common expenses as the costs for personnel, home office services, and field office services. No written agreement controlled the allocation of expenses. Minutes from a meeting of plaintiff's board of directors state the companies' original understanding: "insofar as possible, and if fair to both companies and dependent upon work performed, the division [of common expenses] should be on an equal basis."

The companies each paid half the common expenses until 1954. In that year, the companies' management jointly determined that the field offices were spending more time on plaintiff's business than on Life's. They reallocated common expenses 60 percent to plaintiff, 40 percent to Life. This allocation continued for 14 years. Then, in 1968, the companies' management decided that changes in business practices warranted a reevaluation of the expense allocation. They determined that the time spent on Life's business had increased since the 1954 allocation and thereupon reinstated the equal division of common expenses.

In 1973, the companies replaced the system of estimating the proper allocation of common expenses. They conducted time studies. The studies indicated that expenses for 1973 should be allocated 77 percent to plaintiff, 23 percent to Life. The companies determined that expenses for 1974 also should be allocated 77 percent to plaintiff, 23 percent to Life.

In 1975, the companies reviewed the allocation of expenses for 1968 through 1972. They selected the percentage of premiums, commissions and policies written for each business as valid predictors of the proper allocation of expenses. The 1975 study contradicted the result of the 1968 review. Whereas in 1968 the companies agreed that

Life's share of the common expenses should be increased, in 1975 they decided Life had been overcharged. Plaintiff voluntarily reimbursed Life for the $1,471,635 overcharge suggested by the 1975 review.

The reallocation of expenses would have resulted in a tax savings to the two companies of approximately $353,192. Including the deduction for the payment to Life, plaintiff claimed a net operating loss of $2,347,713 for 1975. Plaintiff carried the net operating loss back to 1972, 1973, and 1974. The carryback greatly reduced plaintiff's income for 1972 and 1974,[1] entitling plaintiff to refunds for those years. Plaintiff received the refunds.

The government audited plaintiff's 1975 return. It disallowed the deduction for the payment to plaintiff's subsidiary. The disallowance reduced plaintiff's net operating loss for 1975 to $747,943. This substantial reduction reduced plaintiff's carryback, and resulted in deficiency assessments of $410,702 for 1972 and $41,891 for 1974. Plaintiff paid the assessments in full and filed this suit for reimbursement. It alleges that the deficiency tax was erroneously and illegally assessed. Plaintiff contends that the payment to Life is deductible under section 162(a) of the Internal Revenue Code as an ordinary and necessary business expense and under section 1341 as a repayment of an amount included in gross income in a prior year under a claim of right.

## II. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure specifies that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 901–02 (9th Cir.1983). The general rule is that the burden of showing the absence of a genuine issue of triable

fact is on the moving party. *International Union of Bricklayers and Allied Craftsman Local Union No. 20, AFL–CIO v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985).[2] Once that burden has been met, the burden then shifts to the opponent of the motion to set forth specific facts indicating that there is a genuine issue for trial. Fed.R.Civ.Proc. 56(e); *Lowe v. City of Monrovia,* 775 F.2d 998, 1008 (9th Cir. 1985), *opinion amended at* 784 F.2d 1407 (9th Cir.1986). *Union of Bricklayers,* 752 F.2d at 1405, *Turner v. Local Union No. 302, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 604 F.2d 1219, 1228 (9th Cir.1979). A party opposing summary judgment must therefore present some significant probative evidence to support his position. *Compton v. Ide,* 732 F.2d 1429, 1434 (9th Cir.1984), *Ruffin v. Los Angeles County,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

In actions challenging the assessment of a deficiency, the I.R.S.'s determination is presumed correct and the taxpayer bears the burden of proving otherwise. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Long v. C.I.R.,* 757 F.2d 957, 959 (8th Cir.1985); *Foster v. C.I.R.,* 756 F.2d 1430, 1439 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986). The government is entitled to the benefit of that presumption in moving for summary judgment. *Long,* 757 F.2d at 959 (*citing Coca-Cola Co. v. Overland, Inc.,* 692 F.2d 1250, 1254 (9th Cir.1982)); *see also, Jones v. Wike,* 654 F.2d 1129 (5th Cir.1981), *Engl v. Aetna Life Insurance Co.,* 139 F.2d 469, 472–73 (2d Cir.1943), 6 *Moore's Federal Practice,* ¶ 56.15[3]. The presumption permits summary judgment in the I.R.S.'s favor unless the taxpayer produces substan-

---

**1.** The record does not indicate why the year 1973 was not similarly affected.

**2.** The Supreme Court has recently indicated that the burden upon the moving party is not necessarily one of producing evidence showing the absence of a genuine issue of material fact.

Instead the moving party may discharge its burden by "showing"—that is, "pointing out to the district court"—that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

tial evidence overcoming it. *Long,* 757 F.2d at 959.

█ Furthermore, the inquiry involved in a ruling on a motion for summary judgment necessarily implicates the substantive evidentiary standard of proof which would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). When determining whether a genuine issue of fact exists, a trial judge must bear in mind the actual quantum and quality of proof necessary to find for plaintiff. *Id.* at ——, 106 S.Ct. at 2514. The issue is whether the evidence presented is such that a rational fact finder, applying the applicable evidentiary standard, could reasonably find for either side. If not, summary judgment is appropriate. *Id.*

### III. *Analysis*

The court has jurisdiction over this case under 28 U.S.C. § 1346(a)(1).

The issues presented[3] by these motions for summary judgment are:

1. Whether defendant may rely on section 482 of the Internal Revenue Code, which imposes a heavier than normal burden of proof on a taxpayer in challenging the I.R.S.'s determinations;

2. Whether the payments made by plaintiff in this case are deductible as ordinary and necessary business expenses under 26 U.S.C. § 162; and

3. Whether plaintiff is entitled to deduct the payment as a repayment of monies previously included in income under claim of right under 26 U.S.C. § 1341.

The court will address each issue in turn.

#### A. *Applicability of Section 482*

Section 482 of Title 26 provides:

In any case of two or more organizations, trades, or businesses whether or not incorporated, whether or not organized in the United States, and whether or not affiliated, owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

Section 482 gives defendant broad discretion to place controlled taxpayers in the same position as uncontrolled taxpayers dealing at arm's length. *Peck v. C.I.R.,* 752 F.2d 469, 472 (9th Cir.1985). The burden of persuasion is upon plaintiff to show error in the defendant's allocation, and the allocation must be sustained unless it is unreasonable, arbitrary or capricious. *Id.*

█ Because of the heavier than normal burden of proving arbitrariness, plaintiff is entitled to notice that defendant intends to rely on section 482. *Foster v. Commissioner,* 80 T.C. 34, 143 (1983), *aff'd in part, vacated in part,* 756 F.2d 1430 (9th Cir. 1985) (appellate discussion did not address notice issue), *cert. denied,* —— U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986). In the case before this court, plaintiff argues that defendant did not give notice of its intent to rely on section 482 until it filed its answer to plaintiff's first set of interrogatories on November 14, 1984, which was two days before it filed its motion for summary judgment.

Plaintiff cites to *Achiro v. Commissioner,* 77 T.C. 881, 891 (1981) as providing the proper framework for assigning the burden of proof in section 482 cases:

Cases dealing with the burden of proof under section 482 have set up a three-tier approach in determining whether respondent may assert section 482, and, if so, whether respondent or petitioner bears the burden of proof thereunder.

First, if the notice of deficiency is clear that respondent is relying on section 482 in support of his deficiency, then the

---

**3.** The parties raise a fourth issue: whether plaintiff's timing of the deduction was proper for an accrual method taxpayer. The court declines to address this issue in light of its holdings on the other issues.

burden is upon the taxpayer to establish that respondent's allocation was unreasonable, arbitrary, or capricious. (Citations omitted.)

Second, if respondent does not indicate in the notice of deficiency that he is relying on section 482, but alerts the taxpayer of his reliance on section 482 formally in pleadings far enough in advance of trial so as not to prejudice the taxpayer or take him by surprise at trial, then the burden of proof shifts to respondent to establish all the elements necessary to support his allocation under section 482. (Citations omitted.)

Third, if respondent raises section 482 at such a late date that the principles of fair play and justice would be abrogated by permitting him to rely on section 482, then he will not be allowed to rely on section 482 at all. (Citations omitted.)

Plaintiff argues that under this reasoning, defendant is not entitled to rely on section 482 at all.

Plaintiff appears to be laboring under a faulty recall of what transpired in this case. Defendant has produced evidence, which has been neither rebutted nor otherwise qualified, that when the I.R.S. sent the notice of deficiency to plaintiff, it notified plaintiff that section 482 would be relied upon.

The applicable law concerning notice of the government's intent to rely on section 482 is found in *Abatti v. C.I.R.*, 644 F.2d 1385 (9th Cir.1981), where the Ninth Circuit held that the taxpayer received sufficient notice of the I.R.S.'s intent to rely on section 482 when it sent the taxpayer the revenue agent's reports which contained a full statement on section 482. *Id.* at 1387 and 1389. The deficiency notices in *Abatti* were mailed separately from the agent's reports. *Id.* at 1388. The court observed that the petitions filed on behalf of the taxpayer subsequent to the sending of the agent's reports indicated that the taxpayer had received and read the reports. *Id.* at 1389. The court concluded that it was "incredible" that the taxpayer was unaware of

the I.R.S.'s theory of the basis for its determination. *Id.*

In this case, defendant has produced a copy of the "Notice of Proposed Deficiency" sent to plaintiff on October 31, 1978. The first line of the text of the notice refers to an attached examination report prepared by an Internal Revenue Service revenue agent. The revenue agent refers to section 482 at page 3 (by referring to section 1.482–1(d)(2) of the Internal Revenue Service's Regulations, which implements section 482) and page 40 (which is page 16 of the income tax examination changes form, dated September 26, 1978, which is incorporated into the revenue agent's report). This latter reference reads:

B. *Section 482, Internal Revenue Code of 1954 would apply:*

The Casualty Co. owns all of the outstanding shares of stock in the Life Co. and therefore is a controlled taxpayer within the meaning of reg. sec. 1.482–1(a)(3). The purpose of section 482 is to place a controlled taxpayer on parity with an uncontrlled [sic] taxpayer. The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arms length with another uncontrolled taxpayer.

(Emphasis added.)

Plaintiff itself refers to defendant's position on section 482 in its claims for refunds dated June 3, 1983. These claims are part of the record as exhibits A and B to plaintiff's complaint. The references occur at pages 28–30 of both exhibits A and B. This indicates, as a matter of law, that plaintiff was aware of defendant's reliance on section 482 even before plaintiff filed its complaint in this court. Furthermore, as in *Abatti*, the taxpayer's reference to the reasoning in the revenue agent's report indicates that the taxpayer received and read the 1978 report. As in *C.I.R. v. Stewart*, 186 F.2d 239 (6th Cir.1951) (cited in the *Abatti* case), plaintiff's petition makes it perfectly plain that it was not misled as to the reasons forming the basis for defendant's actions. *Id.* at 242.

■ Taken together, the above cases compel the finding that defendant's notice concerning the applicability of section 482, which was given approximately six years prior to plaintiff's filing of its complaint for refund, was adequate. Plaintiff has produced no evidence suggesting that the notice was not received or understood; indeed, the exhibits attached to plaintiff's complaint show that plaintiff was fully aware that the defendant proposed to rely on section 482. Absent rebuttal evidence, the court concludes that there is no genuine triable issue of fact on the notice issue. *See United States v. Ahrens*, 530 F.2d 781 (8th Cir.1976) (summary judgment for I.R.S. proper when taxpayer fails to rebut commissioner's showing on adequacy of notice).

At the very least, this conclusion means that plaintiff will have the burden of proving at trial that defendant's determinations on plaintiff's tax liability are unreasonable, arbitrary or capricious. For summary judgment purposes, however, the court must address the question of whether, based on each party's showings, a reasonable fact finder could conclude either that defendant's determination was unreasonable, arbitrary or capricious, or that it was not. If the fact finder could conclude either way, summary judgment for either party is inappropriate. If, however, the showings indicate that a reasonable fact finder could conclude but one way, summary judgment is appropriate.

### C. *Section 162: Ordinary and Necessary Business Expense*

■ Plaintiff in this case sought to deduct its payment to its subsidiary as an "ordinary and necessary" business expense under 26 U.S.C. § 162. Defendant disallowed the deduction under section 162 on the grounds that the payment was not "necessary."

Section 162(a) of the Internal Revenue Code permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162. "An 'ordinary' expense is one that is normally to be expected, in view of the circumstances facing the business, and a 'necessary' expense is one that is appropriate and helpful to the business." *Palo Alto Town & Country, Inc. v. C.I.R.*, 565 F.2d 1388, 1390 (9th Cir.1977) (*citing C.I.R. v. Heininger*, 320 U.S. 467, 471, 64 S.Ct. 249, 252, 88 L.Ed. 171 (1943)). The determination of whether an expense is ordinary and necessary and therefore deductible is a question of fact. *Lee v. C.I.R.*, 723 F.2d 1424, 1426 (9th Cir.1984); *Ford v. Commissioner*, 487 F.2d 1025, 1026 (9th Cir.1973).

The Ninth Circuit recently had occasion to address the issue of what constitutes business necessity in *Inland Asphalt Co. v. C.I.R.*, 756 F.2d 1425, 1427–29 (9th Cir. 1985). In *Inland*, the plaintiff, a Subchapter S corporation, promised to reimburse some of its shareholders for any deficiency that might be assessed against them in a pending tax court dispute. When deficiencies were assessed, the plaintiff's board of directors and shareholders passed a resolution authorizing the promised reimbursement. The corporation then deducted the reimbursement as an ordinary and necessary business expense. The commissioner disallowed the deduction; the tax court found in favor of the commissioner.

The Ninth Circuit affirmed the tax court's disallowance of the deduction, holding that the plaintiff had not produced sufficient evidence to support its claim that the payment was a matter of necessity. Specifically, the court noted that the plaintiff corporation had not sought legal advice as to whether its failure to reimburse its shareholders would have given rise to an actionable claim against it, nor had it produced any evidence that the shareholders were even contemplating a suit against it.

Although litigation or a threat of litigation is not an essential element of deductibility in this context, the absence of objective indicia of necessity leaves us with nothing more than the corporation's subjective belief that the deficiency payments served some business purpose or provide a corporate benefit. *A corporation's subjective assertion of necessity,*

*however, cannot foreclose the question of business necessity under section 162. Id.* at 1428 (emphasis added).

In this case, defendant argues that plaintiff has failed to produce any objective evidence of the business necessity of its payment to Life. Defendant alleges that plaintiff did not seek legal advice regarding any legal liability it might have for the alleged overcharges to Life prior to making the payment. Defendant also notes that plaintiff has not provided any evidence that Life ever considered bringing a suit against it prior to the reimbursement. Defendant points to plaintiff's officer's statement that the payment was made out of "general principles of equity and fair dealing" as evidence that all the taxpayer possessed was a subjective belief that the payment was necessary as "the right thing to do."

Plaintiff presents no evidence that it ever sought legal advice concerning a possible legal claim against it by Life. Nor does plaintiff contend that Life ever considered or threatened to bring a lawsuit against it.[4]

Instead, plaintiff argues that the payments, though voluntary, were necessary since their primary purpose was to repair or improve business relations, *citing Harold L. Jenkins,* ¶ 83,667 T.C.M. (P–H) (1983) (taxpayer, country singing star Conway Twitty, voluntarily repaid investors in his failed "Twitty Burger" venture in order to protect his professional reputation); *M.L. Eakes Co.,* ¶ 81,429 T.C.M. (P–H) (1981) (taxpayer voluntarily repaid trade creditors of a related corporation in order to obtain credit for itself); *C. Doris H. Pepper,* 36 T.C. 886 (1961) (taxpayer attorneys voluntarily reimbursed parties who had invested in their client's fraudulent

scheme in order to protect their firm's reputation); *Snow v. Commissioner,* 31 T.C. 585 (1958) (payments by law partnership to support a savings and loan association which generated legal fees for the firm); *L. Heller and Son, Inc. v. Commissioner,* 12 T.C. 1109 (1949) (payments by jeweler to creditors of bankruptcy subsidiary in order to improve credit-rating). In each of these cases the taxpayers made voluntary payments to third parties when the existence of the obligations threatened existing business relations and the taxpayers' reputations.

The circumstances surrounding the plaintiff's payments to its subsidiary are distinguishable from those in the cited cases. In the cited cases, the taxpayers made payments to *third parties* with whom they dealt at arm's length,[5] whereas in the present case the boards of directors of the two companies are composed of the same persons; thus, plaintiff was essentially repairing business relations with itself.[6]

Under such circumstances, and, in the absence of any objective evidence of business necessity, there is no genuine issue of fact concerning the reasonableness of the defendant's determination that the payments plaintiff sought to deduct were not ordinary and necessary business expenses under section 162. Accordingly, summary judgment in favor of defendant on this issue is proper.

### D. *Section 1341: Repayment of Amount Taken into Income Under Claim of Right*

Plaintiff also argues that the amounts repaid to Life are deductible under 26 U.S.C. § 1341. Section 1341 allows a tax-

---

**4.** Realistically, such a threat of litigation would have been extremely unlikely, given that plaintiff and Life shared a common board of directors.

**5.** The court notes that the generally accepted standard of evidence necessary to overcome the presumption of correctness and establish the arbitrariness of the I.R.S.'s allocations requires that the taxpayer present sufficient evidence that the payments made would not have varied had one uncontrolled taxpayer dealt with another uncontrolled taxpayer at arm's length. *Luf-*

*kin Foundry and Machine Co. v. C.I.R.,* 468 F.2d 805, 807 (5th Cir.1972). Plaintiff has presented no such evidence in this case.

**6.** The lack of arm's length dealing also undermines plaintiff's argument that its failure to make the payment could have given rise to a claim for breach of the covenant of good faith and fair dealing. As the government observes, such a claim would require plaintiff to allege that the board of directors was attempting to take unreasonable advantage of itself.

payer to deduct monies received under a claim of right in prior taxable years when it is subsequently determined that the taxpayer did not have such an unrestricted right to the monies. Section 1341 allows taxpayers to pay the lesser of (1) their normal tax for the year of restoration, computed with a deduction for the amount restored, or (2) a tax computed without such deduction, but reduced by the amount the tax in the year of receipt would have been decreased had the amount restored been excluded. I.R.C. § 1341.[7]

Treasury Regulation section 1.134–1 establishes the prerequisites for claiming a section 1341 deduction: The taxpayer must have

(1) included an item in its gross income under a claim of right;

(2) established that, in fact, the taxpayer did not have an unrestricted right to the item; and

(3) been entitled under other provisions of the Internal Revenue Code to a deduction of more than $3,000 because of the repayment to another of the sum previously included in the taxpayer's gross income.

Treas.Reg. § 1.134–1. Defendant argues that, as a matter of law, plaintiff's payment to its subsidiary in this case fails to satisfy these requirements. The court will address each requirement in turn.

1. Amount Included in Gross Income in a Prior Year

Defendant first argues that the money paid to plaintiff's subsidiary was not an amount "taken into income" by plaintiff in previous years. Because plaintiff did not actually receive and include in gross income the amounts it repaid to Life, defendant contends that section 1341 is not applicable.

Plaintiff contends that the amounts repaid to Life were indirectly included in its gross income. It argues that Life's payment of more than its share of common expenses reduced plaintiff's expenses, thereby increasing its gross income. Plaintiff further argues that to condition the availability of section 1341 on the "book treatment" given the allocation of expenses would "thwart the ameliorative purpose intended by Congress in enacting the section," *citing Van Cleave v. United States,* 718 F.2d 193, 197 (6th Cir.1983).

Because this suit involves the right to the deduction, a strict application of the statute is warranted. *Corn Products Refining Co. v. C.I.R.,* 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955), *reh'g denied,* 350 U.S. 943, 76 S.Ct. 297, 100 L.Ed. 823 (1956); *Kappel v. United States,* 281 F.Supp. 426, 431 (W.D.Pa.1968), *aff'd,* 437 F.2d 1222, *cert. denied,* 404 U.S. 830, 92 S.Ct. 71, 30 L.Ed.2d 59 (1971). The statute explicitly singles out taxpayers who have included an amount in their gross income, paid taxes on that amount, and subsequently were required to restore that amount to another. *Van Cleave,* which involved a corporate officer's repayment of income determined by the Internal Revenue

7. Specifically, Section 1341 provides:
(a) General rule.—If—
(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:
(4) the tax for the taxable year computed with such deduction; or
(5) an amount equal to—
(A) the tax for the taxable year computed without such deduction, minus
(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).
For purposes of paragraph (5)(B), the corresponding provisions of the Internal Revenue Code of 1939 shall be chapter 1 of such code (other than subchapter E, relating to self-employment income) and subchapter E of chapter 2 of such code.

Service to be excessive; falls within this category.

██ What plaintiff in this case seeks to do, however, is apply section 1341 to taxpayers who have missed an opportunity to take a business expense deduction. Absent any authority suggesting that Congress intended the phrase "item included in gross income" to be read so broadly, the court finds that section 1341 does not apply in such a situation. *See The First National Bank of Elkhart County v. U.S.*, 330 F.Supp. 975, 977 (N.D.Ind.1971) (disallowing section 1341 treatment for amounts ultimately paid to employee who had been underpaid in previous years on the grounds that the salary mistakenly withheld had been included in *adjusted* gross income, not gross income).

### 2. Establishing that the Taxpayer did not have a Right to the Funds

The language in section 1341 requires that there be a legal obligation to restore the funds before a taxpayer is entitled to the deductions allowed by section 1341. The operative language in this context is

A deduction is allowable ... because *it was established* ... that the taxpayer did not have an unrestricted right to such item ...

26 U.S.C. § 1341(a)(2) (emphasis added). Thus, voluntary repayments are outside the scope of section 1341. *Kappel*, 437 F.2d at 1226 (*citing Crellin's Estate v. C.I.R.*, 203 F.2d 812, 815 (9th Cir.), *cert. denied*, 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381 (1953), *U.S. v. Simon*, 281 F.2d 520, 524–26 (6th Cir.1960).

██ The source of the obligation need not be a court judgment; however, there must be a clear showing, under state statutes or decisions, of the taxpayer's liability to repay. *Kappel*, 281 F.Supp. at 432–33 (*citing Joseph S. Pike*, 44 T.C. 787 (1965)). In this case, there is no evidence of a legal obligation on the part of plaintiff to repay its subsidiary; instead, the court has already concluded that it was motivated by a subjective belief concerning the necessity of repayment.

### 3. Deductibility of Repayment under other Section of Internal Revenue Code

Finally, Treasury Regulation 1.1341–1(a)(1) requires that before a taxpayer may invoke section 1341, the taxpayer must be entitled under some provision of the Internal Revenue Code to a deduction for the restoration payment in that year. *See Bailey v. C.I.R.*, 756 F.2d 44, 46 (6th Cir. 1985) (Federal Trade Commission fined taxpayer; taxpayer attempted to deduct the $1,036,000 fine as restoration of an amount previously included in gross income; court held that taxpayer failed to meet the prerequisites of a section 1341 deduction because section 162(f) of the Internal Revenue Code specifically precludes the deductibility of any fine or similar penalty); *National Life and Accident Ins. Co. v. United States*, 244 F.Supp. 135, 139–42 (M.D. Tenn.1965), *aff'd in part and rev'd in part on other grounds*, 385 F.2d 832 (6th Cir. 1967).

██ The court has already ruled that plaintiff's payment to its subsidiary was not deductible as an ordinary and necessary business expense. Plaintiff has not demonstrated its deductibility under any other provision of the Internal Revenue Code. "Plaintiff [cannot] circumvent its inability to take an appropriate deduction ... by ... urging its right to take a deduction under Section 1341...." *National Life and Accident Ins.*, 244 F.Supp. at 140. Therefore, plaintiff fails to meet the requirements of a section 1341 deduction, as a matter of law. There has been no showing that defendant's determination on the section 1341 issue is unreasonable, arbitrary or capricious. Accordingly, defendant is entitled to summary judgment on this issue as well.

### IV. *Conclusion*

In light of the foregoing IT IS ORDERED that:

1. Defendant's motion for summary judgment is GRANTED; and

2. Plaintiff's motion for summary judgment is DENIED.