In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1324

KENNETH HEITING and ARDYCE HEITING,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 19-cv-224 — **James D. Peterson**, *Chief Judge*.

_____

ARGUED JANUARY 14, 2021 — DECIDED OCTOBER 18, 2021

_____

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Plaintiffs Kenneth and Ardyce Heiting brought this action seeking an income tax refund of the taxes they had paid on an unauthorized sale of stock by a trust. The IRS denied the relief, and the Heitings filed their complaint seeking the refund. The district court granted the government's motion to dismiss that complaint, and the Heitings appeal that decision.

In January 2004, the Heitings created the Kenneth E. and Ardyce A. Heiting Joint Revocable Trust. The trust was administered at all relevant times by the trustee BMO Harris Bank. Because the Heitings could revoke the trust agreement at any time during their lifetime, the trust is considered a "grantor trust" for purposes of federal taxation. As a grantor trust, the trust itself filed no tax returns, and the Heitings reported the trust's gains and losses on their own returns. See *Schulz v. Comm'r of Internal Revenue*, 686 F.2d 490, 495 (7th Cir. 1982) (noting that "[t]he main thrust of the grantor trust provisions is that the trust will be ignored and the grantor treated as the appropriate taxpayer whenever the grantor has substantially unfettered powers of disposition.")

Under the terms of the trust, the trustee had broad authority as to the trust assets in general, but that power was explicitly limited with respect to two particular categories. With respect to Bank of Montreal Quebec Common Stock ("BMO") and Fidelity National Information Services, Inc. Common Stock ("FIS") (collectively, the "restricted stock"), the trustee had "no discretionary power, control or authority to take any action(s) with regard to any shares … including, but not limited to, actions to purchase, sell, exchange, retain or option the Stock." Amendment and Restatement of the Joint Trust Agreement, Articles IX and X, App. at A-21. In contrast to the nearly limitless power as to other stocks, with respect to the restricted stock the trustee thus lacked the authority to take any actions, including any sale or purchase of that stock, absent the Heitings' express authorization.

Despite that restriction, the trustee in October 2015 sold the restricted stock held in the trust and incurred a taxable gain on the sale which totaled $5,643,067.50. The Heitings

accordingly included that gain in their gross income on their 2015 personal tax return, and paid taxes on it. The trustee subsequently realized that the sale of the stock was prohibited by the trust agreement, and in January 2016 the trustee purchased the same number of shares of that restricted stock with the sale proceeds from the earlier transaction.

Following the purchase of the restricted stock in 2016, the Heitings sought to invoke the claim of right doctrine as codified in 26 U.S.C. § 1341 to claim a deduction on their 2016 return. Under the claim of right doctrine, a taxpayer must report income in the year in which it was received, even if the taxpayer could be required to return the income at a later time but would then be entitled to a deduction in the year of that repayment. *United States v. Skelly Oil Co.*, 394 U.S. 678, 680 (1969). To alleviate inequities in the application of that doctrine, Congress subsequently enacted 26 U.S.C. § 1341, which added, as an alternative to the deduction in the repayment year, the option of the taxpayers recomputing their taxes for the year of receipt of the income. *Id*. at 681–82.

In order to qualify for relief under § 1341(a), taxpayers must plead that: "(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item; (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and (3) the amount of such deduction exceeds $3,000." 26 U.S.C. § 1341(a)(1)–(3). If those are established, then the tax imposed for the taxable year is the lesser of "the tax for the taxable year computed with such deduction," or "the tax for the taxable year computed without

such deduction, minus … the decrease in tax … for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years)." 26 U.S.C. §1341(a)(4)–(5).

In initially rejecting the Heitings' claim for a tax refund, the IRS relied on an exception in the statute, maintaining that under § 1341(b)(2) such relief was inapplicable to "the sale or other disposition of the Stock in trade of the taxpayer." Before the district court, however, the government did not argue that the denial of relief was supportable on that reasoning, abandoning any reliance on the stock-in-trade provision to support the denial. Nor does it argue such a basis for denial here. Accordingly, that rationale is not before us.

In granting the government's motion to dismiss, the district court held that the Heitings were entitled to a credit on the taxes under § 1341 only if they were legally obligated to return the proceeds of the restricted stock sale, and that the complaint alleged no such obligation. We consider *de novo* a district court's grant of a motion to dismiss, accepting all well-pleaded facts as true and taking all reasonable inferences in the plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). We can affirm on any ground adequately raised in the district court that is supported by the record. *Id.*

On appeal, the government concedes that the Heitings can establish the first requirement under § 1341(a), in that they alleged the receipt of an item of income in 2015—the $5.6 million gain received on the sale of the restricted shares—which was taxable directly to the Heitings as taxpayers because the revocable trust is disregarded for tax purposes. The government asserts that the second element of § 1341(a)

was not met, however, and that the district court properly granted the motion to dismiss on that basis. First, as it did in the district court, the government argues that the Heitings failed to adequately allege that, after the close of tax year 2015, they did not have an unrestricted right to the income from the sale of the restricted stock held in their trust, and were under a legal obligation to restore that income to its actual owner, as is required under § 1341(a)(2). The government asserts that the trustee simply bought some stock in 2016 in an attempt to reverse the effect of the earlier, 2015, transaction, but the taxpayers' right to the income from the earlier transaction was never in question. Finally, the government argues that the Heitings did not, and could not, plead that their "restoration" of income was a deductible expense to them, as required under § 1341.

The Heitings contend that because the issue is the tax obligations of the trust, not of themselves as individuals, the proper focus must be on whether the *trust* had an unrestricted right to the income in the initial and subsequent tax years. Accordingly, they challenge the argument of the government that there was no legal obligation to restore the item of income because the Heitings, the taxpayers here, had the ability to approve of the sale of the restricted stock and therefore authorize the sale and the retention of the proceeds after-the-fact. See Wis. Stat. § 701.0808(1) (stating that "[w]hile a trust is revocable, the trustee may follow a direction of the settlor that is contrary to the terms of the trust.") They argue that the district court, in determining that the requirements of § 1341(a)(2) were not met, improperly relied on the nature of the trust under which the Heitings themselves could approve of the sale of the restricted stock after the fact thus eliminating

any restriction on the income or any legal obligation to restore the income.

As the sole beneficiaries, the Heitings had an unrestricted right to the funds, because they had the absolute authority to choose to accept the funds and authorize the trust's actions. But the Heitings maintain that the proper focus is on the *trust's* actions, and whether the *trust* retained an unrestricted right to the funds, arguing that they merely stepped into the shoes of the trust in including the trust income on their taxes. We need not address that issue, however, because even considering only whether the trust itself had an unrestricted right to the funds, the Heitings cannot succeed. With that focus on the obligations of the trust rather than the Heitings, we turn to the Heitings' challenge to the dismissal.

The Heitings argue that the trustee's sale and subsequent repurchase of the restricted stock falls within the language of § 1341(a) as a taxable transaction that was "reversed" in the year after the sale by a trustee that was legally obligated to do so. As an initial matter, the characterization of the purchase as a "reversal" of the original sale implies that the second transaction was a retraction of the first, undoing it cleanly and putting the parties to the transaction in the same place as before it, but as the government points out the different timing of the two transactions renders that characterization inaccurate. The government asks us to take judicial notice of the publicly reported stock prices on the New York Stock Exchange, which would indicate that BMO shares that the trust sold for $59.27 in 2015, were repurchased for a lower price, between $50.18 and $52.46, on January 13, 2016, and the FIS shares that the trust sold for $72.24 per share in 2015, were repurchased at a lower price of between $58.93 and $60.70 on

January 13, 2016. We need not take judicial notice of the actual numbers to conclude that a sale of stock in one time period cannot be simply "reversed" by purchasing the stock back at a different time, because the fluctuation in prices will often result in a greater loss or gain over that time. But regardless of the characterization of the transactions, the insurmountable problem for the Heitings is not that the transactions were unequal in nature, but that the complaint does not adequately allege that the trust had a legal obligation to restore the items of income—the restricted stock—as is required under § 1341(a)(2).

Under § 1341(a)(2), the Heitings had to show that the repayment in the later year occurred because "it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item." See *Alcoa, Inc. v. United States*, 509 F.3d 173, 177 (3d Cir. 2007) ("The taxpayer bears the burden of proving his eligibility for section 1341 treatment."). The language requiring that "it was established" that the taxpayer did not have an unrestricted right to the item has been interpreted as requiring a legal obligation to restore the item of income; a voluntary choice to repay is not enough. *Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1293–94 (11th Cir. 2015) ("[t]he taxpayer's return of the income must not be the result of the taxpayer's purely voluntary choice; rather, it must be 'established,' for example, by a court, that the taxpayer did not have an unrestricted right to the income. … [P]ayments made to settle a lawsuit may satisfy this requirement."); *Cal-Farm Ins. Co. v. United States*, 647 F. Supp. 1083, 1092 (E.D. Cal. 1986), aff'd 820 F.2d 1227 (9th Cir. 1987) (noting that the statute requires a legal obligation to restore the funds and that "voluntary repayments are outside the

scope of section 1341"). To meet that requirement, taxpayers must demonstrate that they "involuntarily gave away the relevant income because of some obligation, and the obligation had a substantive nexus to the original receipt of the income." *Mihelick v. United States*, 927 F.3d 1138, 1146 (11th Cir. 2019). That involuntary legal obligation to restore the item of income can be shown by a court judgment requiring the repayment, but a good-faith settlement of a claim can also suffice. *Id.*; *Cal-Farm Ins. Co.*, 647 F. Supp. at 1092.

We have no allegation here that "it was established" that the trust did not have an unrestricted right to the item of income in this case. The Heitings have alleged only that the trustee's sale of the restricted stock was contrary to the trust agreement. At most, that alleges a potential restriction, which originated at the time of the transaction in 2015. But the Heitings make no allegations that they, as the sole beneficiaries of the trust, demanded the restoration of the stock or otherwise communicated an intent to pursue any of their rights for the breach of the trust agreement. The existence of a potential claim against the income is not enough to "establish" that the trust lacked an unrestricted right to the income.

In fact, the case relied upon by the Heitings in this case, *First Nat. Bank of Chicago v. United States*, 551 F. Supp. 157 (N.D. Ill. 1982), makes clear that distinction, and weighs against the Heitings' position. In *First National*, an action was brought by the trustees of two trusts for a refund of taxes paid in 1972 and 1973. The taxes were paid on the proceeds of the sale of certain stock in 1972 and 1973, and the propriety of the sale by the trusts was challenged by a trust beneficiary. *Id*. at 158. The trust beneficiary filed a lawsuit as to that challenge

in 1974, and a court ultimately ordered the sale rescinded. *Id*. The question before the *First National* court was whether the taxpayer's right to the items of income was not actually "unrestricted" in 1972 and 1973 given that the sale was limited by the trust agreement and the challenge raised to the sale by one of the trust's beneficiaries.

The *First National* court held that "[t]he fact that a trust beneficiary disputed the sale only represented a 'potential restriction' which is not a 'restriction on use'" within the meaning of the claim of right doctrine. *Id*. at 159. For that holding, the *First National* court cited *Healy v. Commissioner of Internal Revenue*, 345 U.S. 278, 284 (1953), which held that under the claim of right analysis, "a potential or dormant restriction … which depends upon the future application of rules of law to present facts, is not a 'restriction on use.'" Accordingly, the *First National* court held that the plaintiff possessed an unrestricted right to the income for the years 1972 and 1973, even though the trustee challenged the sale and the trustees were bound by the fiduciary obligation to the beneficiary. The trustee was entitled to a deduction in the year of repayment once it was established that the taxpayer did not have an unrestricted right by the beneficiaries' pursuit of a lawsuit and judgment.

The *First National* court made clear, therefore, that an initial objection by a beneficiary to the sale, or the limitations of the trust agreement itself, were not in themselves sufficient to demonstrate that the taxpayer did not have an unrestricted right to the item of income. That is essentially what we have here. Unlike *First National*, there is no such order requiring the re-purchase of the stock, and no requirement that the funds be returned to another. In fact, the Heitings do not even allege

a challenge by the beneficiaries to the sale—and as the beneficiaries, they would be in a position to identify any challenge. Instead, they merely argue that the sale of the restricted stock was in violation of the terms of the trust agreement. That is precisely the type of potential or dormant restriction, dependent on the future application of law to fact, that is insufficient to indicate that a right to the item of income was not an unrestricted one. See also *Inductotherm Indus., Inc. v. United States*, 351 F.3d 120, 124 (3d Cir. 2003) (holding that even though the government could prosecute a corporation for the failure to comply with an Executive Order placing restrictions on certain funds, the government had the discretion not to pursue that violation, and the Executive Order was therefore merely a potential or dormant restriction which depended on the future application of law to facts and not a disposition restriction under the second prong of § 1341).

Finally, the only authority relied upon by the Heitings as establishing a legal obligation to reverse the sale does not support that interpretation. The Heitings point to Wisconsin statutory law allowing lawsuits against trustees and setting forth the remedies for a breach of trust. See Wis. Stat. §§ 701.0201, 701.1001. That authority does not help the Heitings. First, the statute does not even mandate as a remedy the action taken by the trustee in this case—the repurchase of the stock. The Wisconsin statute cited by the Heitings provides a list of potential remedies for a breach of trust including, among others: compelling a trustee to redress a breach of trust by paying money, restoring property, or other means; ordering a trustee to account; suspending or removing the trustee; reducing the compensation or denying the compensation to the trustee; and voiding an act of a trustee,

or tracing trust property and ordering recovery of the property or its proceeds (although this option is unavailable in the case of a good faith purchaser). See Wis. Stat. § 701.1001(2)(a)–(j). Given the range of potential remedies, including merely seeking damages from the trustee or suspending or removing the trustee, the statutory authority certainly does not establish an *obligation* for the trustee to repurchase the stock. In contrast, the terms of the trust agreement specifically *prohibited* the purchase of the restricted stock in 2016, just as it had prohibited the sale of that stock in 2015. Therefore, the legal authority relied upon by the Heitings fails to establish that the trustees had a legal obligation to purchase the restricted stock in 2016 but does establish—by the terms of the trust agreement—a prohibition on that action.

Moreover, the statutory authority is unhelpful for an even more fundamental reason, which is that the beneficiaries never sought any relief at all from the trustee, nor did they allege an intent or even a threat to do so. As we discussed earlier, although the Heitings were the beneficiaries of the trust with the authority to approve or disapprove of the actions of the trustee, the complaint contains no allegation that they ever challenged the purchase of the restricted stock or made any demand of the trustee with respect to that sale of the restricted stock. At most, then, the reference to the Wisconsin statutory rights alleges that the Heitings could have pursued a legal remedy if they in fact were displeased with the trustee's actions in breach of the trust. That mere possibility is, as we have shown, insufficient to "establish" that the trust lacked an unrestricted right to the proceeds of the sale of the restricted stock. Accordingly, the district court properly determined that the requirements of § 1341(a)(2)

were not met and we need not consider the government's alternative argument that the Heitings did not, and could not, plead that their "restoration" of income was a deductible expense to them, as required under § 1341.

The decision of the district court is AFFIRMED.